**Martize James SEVION, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 18A04–9303–CR–108.**

Court of Appeals of Indiana, Fourth District.

Sept. 15, 1993.

---

Kelly N. Bryan, Muncie, for appellant-defendant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Defendant–Appellant Martize James Sevion appeals his conviction for reckless homicide, a class C felony. IND.CODE 35–42–1–5.

We affirm.

Sevion's sole issue for our review is whether the trial court erred in admitting, over objection, his statement to the police.

The facts most favorable to the verdict reveal on April 30, 1992, seventeen year old Sevion shot and killed Steven Wade in what appeared to be a gang related incident.

On May 4, 1992, Sevion contacted Muncie Police Investigator Lt. Charles Hensley and arranged to come to the police station to give a statement on the following day. On the next evening, Sevion arrived at the police station with Antonio Johnson, the eighteen year old with whom Sevion lived. Before taking a statement from Sevion, Lt. Hensley attempted to contact the juvenile's relatives. Sevion's mother and father were incarcerated. Lt. Hensley tried unsuccessfully to call Sevion's aunt, Lola Blair, but she had disassociated herself from him. Sevion told Lt. Hensley before his mother

had been incarcerated, she had placed him in Johnson's care. Lt. Hensley then advised Sevion and Johnson of Sevion's constitutional rights and both signed the waiver form. Subsequently, Lt. Hensley obtained a videotaped statement from Sevion in which he admitted shooting the victim. After the statement was completed, Lt. Hensley arrested Sevion.

At the jury trial, the State played, over Sevion's objection, the videotape for the jury. The jury convicted Sevion of reckless homicide for which the court later sentenced him to eight years incarceration. He appeals.

Sevion contends the trial court erred in admitting his confession because the procedural safeguards for the waiver of a juvenile's constitutional rights, as required by IC 31–6–7–3, were not followed. He argues Johnson was not an appropriate custodian to waive his rights because he had an adverse interest to Sevion.

In *Lewis v. State* (1972), 259 Ind. 431, 288 N.E.2d 138, our supreme court set forth guidelines for police who receive a statement from a juvenile.[1] IC 31–6–7–3 codifies those guidelines as follows:

(a) Any rights guaranteed to the child under the Constitution of the United States, the Constitution of Indiana, or any other law may be waived only:

(1) by counsel retained or appointed to represent the child, if the child knowingly and voluntarily joins with the waiver; or

(2) by the child's custodial parent, guardian, custodian or guardian ad litem if:

(A) that person knowingly and voluntarily waives the right;

(B) that person has no interest adverse to the child;

(C) meaningful consultation has occurred between that person and the child; and

(D) the child knowingly and voluntarily joins with the waiver.

Strict compliance with IC 31–6–7–3 is necessary to safeguard the rights of juveniles. *Deckard v. State* (1981), Ind.App., 425 N.E.2d 256.

If a juvenile, who is not in custody, gives a statement to police, neither the safeguards of the *Miranda* warning nor IC 31–6–7–3 applies to him *under most circumstances*. *Scott v. State* (1987), Ind., 510 N.E.2d 170, 173 *cert. denied* 484 U.S. 978, 108 S.Ct. 492, 98 L.Ed.2d 490. For an interrogation to be custodial in nature, one does not necessarily have to be under arrest. To be custodial in the non-arrest context, the interrogation must commence after the person's freedom of action has been deprived in any significant way. *Grass v. State* (1991), Ind., 570 N.E.2d 32, 34.

In the present case, at the time Sevion volunteered his statements he was not in custody nor was his freedom of action limited. On the day before he gave his statement, Sevion telephoned the police and arranged a time to provide a statement to police. The next day when he arrived at the police station in the city hall, there were no charges against him even though he was a suspect. He was placed in an office and was free to go at any time. In fact, he was left alone for several periods of time while the police tried to verify who his guardian was and later to get the videotape ready to record. The circumstances under which this interview took place, irrespective of the decision of the police officer to extend the procedural safeguards of IC 31–6–7–3 to Sevion, support only the conclusion it was non-custodial. Any failure therefore of the police interrogator to employ the special procedural safeguards required by IC 31–6–7–3 would not render the product of the interviews inadmissible.

Furthermore, even if the questioning were deemed custodial in nature, the

---

1. IC 31–6–7–3 while essentially a codification of the holding in *Lewis,* 288 N.E.2d at 138, differs in one respect. In *Lewis* our supreme court stated a child could by himself waive his constitutional rights, while the Code prohibits unilateral waiver by the child. Instead, under the Code only counsel or the child's custodial parent, guardian, custodian may waive the child's rights.

police complied with the statute. As shown in the above cited statute, a "custodian" can act as the consulting adult for a juvenile. "Custodian" is defined as a person with whom a child resides. IC 31–6–1–14.

When Sevion came to give his statement, Sevion brought along Antonio Johnson, the eighteen year old adult with whom he was living. Before hearing Sevion's statement, Lt. Hensley attempted to contact Sevion's parents but found they were incarcerated. Prior to being incarcerated, Sevion's mother placed Sevion in the custody of Antonio Johnson. Lt. Hensley also attempted to contact an aunt but she did not want to be associated with Sevion. The main concern of *Lewis* and its progeny is to afford the juvenile defendant a stabilizing and relaxed atmosphere in which to make a serious decision that could possibly affect the rest of his life. *Andrews v. State* (1982), Ind., 441 N.E.2d 194, 198 (holding consultation with grandmother rather than parent was proper). The atmosphere enables the juvenile to make a decision under adult supervision while free from police coercion. In the present case, the adult Sevion trusted was the adult he brought with him: Antonio Johnson. Johnson felt sufficiently secure in the role to accompany him to the police station and to sign papers as Sevion's guardian. Given these facts, it is logical Johnson would be the appropriate person to advise Sevion.

Contrary to Sevion's characterization of the facts, we find no adverse interest which would have disqualified Johnson from consulting with Sevion. Sevion, not Johnson, was considered a suspect in the crime based on statements taken from eyewitness after the shooting. At the time of Sevion's confession, Lt. Hensley testified there was evidence Johnson's vehicle was nearby the shooting, but there was no evidence Johnson was in possession of a gun at the scene. Johnson's statements to police revealed that, although he was nearby, he only heard the shot. Johnson never indicated Sevion was involved with shooting nor did he testify at trial.

We recognize the need for the State to respect the rights of juveniles and strive to provide consultation with a person who does not stand to benefit by cooperating with the police and by encouraging the juvenile to act in a manner adverse to his interests. *Buchanan v. State* (1978), 268 Ind. 503, 507, 376 N.E.2d 1131, 1134. However, in the instant case, the State was placed in a somewhat awkward situation because the adult with whom Sevion was residing was also a witness to the crime. Under the circumstances, the problem could only be avoided by the appointment of a guardian ad litem or an attorney. This, however, would have defeated the purpose for requiring the presence of a parent or a guardian. The *Lewis* rule was intended to attempt to equalize the pressures born by juveniles and adults during custodial interrogation by providing a familiar and friendly influence at the time of questioning. *Whipple v. State* (1988), Ind., 523 N.E.2d 1363, 1370, *cert. denied* —— U.S. ——, 113 S.Ct. 218, 121 L.Ed.2d 157. Providing a disinterested stranger would not achieve this goal. *Id.* Under all the circumstances, we are compelled to conclude the State exercised adequate precaution to insure Sevion had the opportunity for meaningful consultation with a person who had no interest adverse to him. Overriding all, however, is the fact Sevion was not in custody at the time he gave the questioned statement to the police.

For the foregoing reasons, we conclude the trial court did not err in admitting Sevion's videotaped statements.

Affirmed.

MILLER and CHEZEM, JJ., concur.