706 N.E.2d 259 (1999)
A.A., Appellant-Respondent,
v.
STATE of Indiana, Appellee-Petitioner.
No. 90A02-9809-JV-723.
Court of Appeals of Indiana.
February 26, 1999.
*260 Susan K. Carpenter, Public Defender of Indiana, John S. Sommer, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.
Jeffrey A. Modisett, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

OPINION
NAJAM, Judge

STATEMENT OF THE CASE
In July of 1997, the State filed a petition and affidavit alleging A.A. to be a delinquent child under Indiana Code § 31-37-1-1.[1] The petition claimed that A.A. had committed an act which would constitute Child Molesting, as a Class B felony, if committed by an adult.[2] During a fact-finding hearing, the State introduced a written confession in which A.A. admitted he had performed oral sex on his then eight-year-old cousin, J.D. At the conclusion of the hearing, the court adjudicated A.A. a delinquent child. A.A. now appeals. The dispositive issue presented is whether A.A.'s confession was voluntary.[3]
We reverse and remand.

FACTUAL AND PROCEDURAL HISTORY
In October of 1995, J.D. reported to Detective Diane Gilliam of the Wells County Sheriff's Department that A.A., his cousin, had molested him. J.D. claimed that during the summer of 1994, A.A. had placed his mouth on J.D.'s penis. In May of 1996, J.D. gave a videotaped statement in which he described the event in detail. A.A. and his mother were present at the taping of J.D.'s statement.
At the conclusion of J.D.'s statement, A.A. approached Detective Gilliam and asked to speak with her about the alleged molestation. Subsequently, A.A. and his mother appeared at the sheriff's department on two separate occasions. Prior to each interview, Detective Gilliam told A.A. and his mother that they *261 were free to leave at any time. During the first interview, A.A. told Detective Gilliam that he had been molested over a five-year period by his uncle, J.D.'s father. Detective Gilliam gave A.A. forms to complete about his allegation and asked that he and his mother return at a later date to discuss both his own and J.D.'s molestations.
When A.A. returned for the second interview, Detective Gilliam and A.A. discussed the possible molestation charges against his uncle. Specifically, Detective Gilliam told A.A. that he would not be a credible witness in the State's molestation case against his uncle unless he confessed to what had occurred between him and J.D. A.A. then admitted that he had performed oral sex on J.D. Thereafter, A.A. and his mother executed a written document in which A.A. stated that two or three years before, while he and J.D. were in his grandfather's storage trailer, A.A. asked J.D. if he had ever had a "blow job." After J.D. said "no," A.A. placed his mouth on J.D.'s penis. He stated that this had happened only one time.
In July of 1997, the State filed its delinquency petition and the parties appeared for a fact-finding hearing. J.D.'s testimony at the hearing contradicted that given in his previous videotaped statement.[4] The State asked that J.D. be shown the tape to refresh his memory, but the tape was not admitted into evidence. The State sought to introduce A.A.'s written confession, and A.A.'s counsel objected on the following grounds: (1) the officer failed to advise A.A. of his Miranda rights, (2) the officer failed to comply with the juvenile waiver statute, and (3) the officer coerced A.A. when she improperly used his molestation allegations against his uncle to secure A.A.'s confession. The court overruled the objections. At the conclusion of the hearing, the court adjudicated A.A. a delinquent child and stated:
The video tape was used by the Court just for what we indicated it was and it was to be displayed only for the purpose of refreshing the memory of [J.D.] and would not be used as substantive evidence.... However, State's Exhibit # 2 [A.A.'s statement] was admitted into evidence over the objection of Defense counsel. The Court specifically does not find [J.D.'s] statement that these things did not happen to be credible. I think that the young man is perjuring himself on the stand. I find that the statement in State's Exhibit # 2 which admits the delinquent act, is sufficient for the Court to find beyond a reasonable doubt that [A.A.] did commit a delinquent act, that being child molesting if committed by an adult.
This appeal ensued.

DISCUSSION AND DECISION
The threshold issue is whether A.A. was subject to custodial interrogation when he confessed. As a general rule, when a juvenile who is not in custody gives a statement to police, neither the safeguards of Miranda warnings nor the juvenile waiver statute[5] is implicated. Sevion v. State, 620 N.E.2d 736, 738 (Ind.Ct.App.1993). For an interrogation to be custodial in nature, one does not necessarily have to be under arrest. Id. To be custodial in the non-arrest context, the interrogation must commence after the person's freedom of action has been deprived in any significant way. Id.
The parties do not discuss whether A.A. was interrogated. The term "interrogation" has been defined as a process of questioning by law enforcement officials which lends itself to obtaining incriminating statements. *262 Jenkins v. State, 627 N.E.2d 789, 796 (Ind.1993), cert. denied, 513 U.S. 812, 115 S.Ct. 64, 130 L.Ed.2d 21 (1994). The record in this case shows that Detective Gilliam asked A.A. to appear at the sheriff's department to discuss J.D.'s molestation claim against him. As we discuss later, Detective Gilliam's statements tended to elicit an incriminating response from A.A. Thus, we conclude that A.A. was interrogated by the officer.
A.A., however, was not under arrest or physically restrained during the interrogation. On the contrary, Detective Gilliam testified that A.A. was not in custody and that A.A. and his mother voluntarily appeared at the interview. Prior to each interview, Gilliam told them that they were free to leave at any time and could speak with an attorney if they wanted. In addition, A.A. left with his mother after he gave his confession. Under these facts, A.A. was not in custody at the time he confessed. Thus, neither Miranda warnings nor the juvenile waiver statute applies.
Our analysis does not end simply because we have determined that A.A. was not in custody when he confessed. See Fowler v. State, 483 N.E.2d 739, 742-44 (Ind.1985); see also Hurt v. State, 694 N.E.2d 1212, 1217-18 (Ind.Ct.App.1998), trans. denied. The admissibility of an incriminating statement is not determined solely by application of the Miranda rules. 1 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 6.1 (1984). For example, "there will be times when Miranda will not even be applicable, either because the defendant was not in custody or otherwise `deprived of his freedom of action in any significant way' or because the police did not engage in interrogation or its `functional equivalent.'" Id. In this case, A.A. argues that his noncustodial confession is inadmissible under the Due Process Clause of the Fourteenth Amendment.[6] In particular, he asserts that Detective Gilliam promised him leniency in exchange for his confession, that she "overbore" him and that, as a juvenile with limited mental abilities,[7] he confessed as a result of police coercion. The State responds that Detective Gilliam's statements during the interrogation merely provided A.A. with a "frank assessment of the State's case" against his uncle, i.e., that the State needed to believe that A.A. was a credible witness before charging the alleged perpetrator.
Coercive police activity is a necessary prerequisite to finding a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. Light v. State, 547 N.E.2d 1073, 1077 (Ind.1989) (citing Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 484 (1986)). A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. United States v. Dillon, 150 F.3d 754, 757 (7th Cir.1998). The critical inquiry is whether the defendant's statements were induced by violence, threats, promises or other improper influence. Page v. State, 689 N.E.2d 707, 710 (Ind.1997). Stated differently, the relevant inquiry is whether the challenged police conduct induced a confession which was not freely self-determined. Fowler, 483 N.E.2d at 744. With regard to noncustodial interrogations, the United States Supreme Court has stated:
We recognize, of course, that noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where "the behavior of ... law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions *263 not freely self-determined...." When such a claim is raised, it is the duty of the appellate court, including this Court, "to examine the entire record and make an independent determination of the ultimate issue of voluntariness."

Beckwith v. United States, 425 U.S. 341, 347-48, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1, 8 (1975) (citations omitted) (emphasis added).
In this case, Detective Gilliam testified on cross-examination as follows:
Q: Did you have any discussion with [A.A.] or with his mother regarding what might happen to him in the course of the juvenile proceeding prior to him giving his statement to you?
A: Do you mean if he confessed?
Q: If he did or if he didn't. Was there any discussion ...
A: Yes, there was.
Q: Do you recall what the nature of that discussion was?
A: We were talking about the fact that he had said he'd been molested by [his uncle], who is [J.D.'s] father and I told him that the Prosecutor's office wanted to make a deal with him that if he did admit to his involvement with [J.D.] ... that we felt that he would be a good witness to use as far as what had happened to him by [his uncle].
Q: Did you indicate to him then that you would not, or the police or the prosecutor would not pursue anything against [his uncle] if he did not confess to the situation involving [J.D.]?
A: I told him we didn't feel that he would be a credible witness if he would not confess to what he had done. Correct.
When questioned about whether there were any promises of immunity in exchange for his confession, Detective Gilliam stated that she knew the State wanted to obtain counseling for A.A. and that "probation would probably put him on house arrest." She also agreed to speak with the prosecutor if A.A. confessed, but she "didn't know what all would happen, maybe curfew." When asked whether she had made any suggestions to A.A. about what would happen if he did not confess, she again testified that "we wouldn't feel that we could prosecute with [A.A.'s uncle] who he had said molested him, if [A.A.] wasn't credible, if we didn't feel [A.A.] was a credible witness."
We first address A.A.'s claim that he was promised leniency in exchange for his confession. It is well established that a confession obtained by a promise of immunity or mitigation of punishment is inadmissible. Ashby v. State, 265 Ind. 316, 320, 354 N.E.2d 192, 195 (1976). In Ashby, our supreme court held that a police officer's direct representation to the defendant that he would receive a "ten flat" sentence instead of a life sentence in exchange for his confession rendered his confession involuntary and, thus, inadmissible. Id. at 321, 354 N.E.2d at 196. Since that decision, however, the court has refused to extend Ashby to cases which do not involve "direct or implied promises" of immunity or leniency. Pamer v. State, 426 N.E.2d 1369, 1374 (Ind.Ct.App.1981). For example, in Love v. State, 272 Ind. 672, 676, 400 N.E.2d 1371, 1373 (1980), the court held that an officer who told a juvenile defendant that if he did not confess he might go to adult prison and that his "cooperation might help in assisting him" did not render the juvenile's confession involuntary.
As the record shows, Detective Gilliam testified that she told A.A. the State "wanted to make a deal" with him. She also stated that the State wanted A.A. to receive counseling and that he would probably be placed on house arrest. In addition, she told A.A. that she would speak with the prosecutor. Contrary to A.A.'s assertion, Detective Gilliam did not promise A.A. immunity or mitigation of punishment. Rather, she suggested the possibility of minimal punishment in exchange for his confession. This alone does not render A.A.'s confession inadmissible.
A.A. further argues that Detective Gilliam "overbore" him and that his confession was obtained by improper influence. In support of his argument, A.A. directs us, in part, to Hall v. State, 255 Ind. 606, 266 N.E.2d 16 (1971). There, the defendant was coerced into signing a written confession when police officers told him that his wife was also a *264 prime suspect and, without his confession, she would be charged. The officers also told the defendant that his children would be placed in the custody of others. Id. at 610, 266 N.E.2d at 19. Our supreme court held that such police "encouragement" violated the defendant's right to due process. Id. at 611, 266 N.E.2d at 19.
Detective Gilliam's conduct is similar to the officers' conduct in Hall. Here, Detective Gilliam used A.A.'s claim that he had been molested by his uncle to obtain his confession. Specifically, she first told A.A. that unless he confessed, the State would not consider him to be a credible witness. She then told him that if the State felt he was not a credible witness, the State would not prosecute his uncle. As in Hall, we conclude that such police coercion is improper.
It is a necessary and appropriate function of law enforcement to assess the credibility of a complaining witness. Contrary to the State's characterization, however, Detective Gilliam's statements did not merely provide A.A. with a frank assessment of the State's case against his uncle. Instead, Detective Gilliam's inquiry went beyond a legitimate assessment of A.A.'s credibility when she gave him an ultimatum that he must confess before his claim against his uncle would be taken seriously. This conduct indicates that it was the officer's "undeviating intent" to obtain A.A.'s confession. See Sparks v. State, 248 Ind. 429, 434, 229 N.E.2d 642, 646 (1967) (citing Spano v. New York, 360 U.S. 315, 320-21, 79 S.Ct. 1202, 1207, 3 L.Ed.2d 1265, 1270 (1959)).
In reviewing the totality of the circumstances, we are aware that A.A. was not in custody when he confessed and that both he and his mother signed his written confession.[8] In most cases, that evidence alone would be sufficient to sustain the court's determination that the confession was voluntary. In this case, however, we must also consider the unique manner in which A.A. was manipulated to confess.
Fifteen-year-old A.A. was both an alleged victim and an alleged perpetrator. During a non-custodial interrogation, Detective Gilliam expressly conditioned A.A.'s redress as a victim upon his own admission of culpability with respect to the criminal charge against him. As such, only if A.A. confessed to a single incident of child molesting which occurred between him and another child would the State prosecute his uncle, an adult, who had allegedly victimized and sexually abused him over a five-year period. A.A. was required to barter a confession in one case in exchange for prosecution of another case.
In Bluitt v. State, 269 Ind. 438, 443, 381 N.E.2d 458, 462 (1978), our supreme court stated, "The fundamental fairness of the arresting officers and the overriding atmosphere of respect within the interrogation process are crucial indices to our examination of the totality of the circumstances surrounding the juvenile's confession. Where there is no evidence of pressure ... the confession is admissible as voluntary." (emphasis added). Here, there is substantial evidence of police pressure on the juvenile. A.A.'s confession was leveraged by an improper quid pro quo. Given the totality of the circumstances, we conclude that A.A.'s confession was not voluntary, that the police conduct in this case violates the Due Process Clause of the Fourteenth Amendment, and that the trial court erred when it admitted the confession into evidence.
Finally, having determined that A.A.'s confession was improperly admitted into evidence, the federal Double Jeopardy Clause requires that we also address the sufficiency of the evidence issue raised by A.A. See Miller v. State, 575 N.E.2d 272, 276 (Ind.1991). In deciding whether retrial is permissible, we consider all of the evidence admitted by the trial court. Id. If that evidence as a whole would have been sufficient *265 to sustain the judgment, no double jeopardy question is presented. Id. Here, A.A.'s confession, albeit improperly admitted, is sufficient to sustain the court's delinquency adjudication. Therefore, the State may file a new delinquency petition without offending the protections afforded by the Double Jeopardy Clause.
Reversed and remanded.
SHARPNACK, C.J., and BAILEY, J., concur.
NOTES
[1] A.A. was sixteen years old at the time the State filed its petition.
[2] See IND.CODE § 35-42-4-3(a).
[3] A.A. also argues: (1) his confession was inadmissible because the State failed to prove the corpus delicti of the crime, and (2) there was insufficient evidence to support the trial court's delinquency adjudication.
[4] In particular, J.D. testified on cross-examination that "these things did not occur."
[5] Indiana Code § 31-32-5-1 provides:

Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived only:
(1) by counsel retained or appointed to represent the child if the child knowingly and voluntarily joins with the waiver;
(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:
(A) that person knowingly and voluntarily waives the right;
(B) that person has no interest adverse to the child;
(C) meaningful consultation has occurred between that person and the child; and
(D) the child knowingly and voluntarily joins the waiver.
[6] Before the protections of the Fifth Amendment became applicable to the states, the United States Supreme Court struck down coerced confessions in state courts "on the notion that interrogation is part of the process by which a state procures a conviction and thus is subject to the requirements of the Fourteenth Amendment due process clause." Id. at § 6.2(b).
[7] A.A.'s predispositional report shows that he has been classified and placed in special education classes and has had mental health referrals. A person's mental condition is relevant, although not controlling, to the determination of the voluntariness of a confession. Pettiford v. State, 619 N.E.2d 925, 928 (Ind.1993).
[8] We cannot discern from the record the extent to which A.A. and his mother had an opportunity for "meaningful consultation" before they executed the written confession. See IND.CODE § 31-32-5-1(1)(C). At the hearing, Detective Gilliam testified that she "assumed" A.A. and his mother were alone "probably five minutes, at the most." In any event, we have already determined that the juvenile waiver statute was not implicated because A.A. was not in custody when he confessed.