**Ronald E. BRABANDT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 22A01–0302–CR–64.

Court of Appeals of Indiana.

Oct. 27, 2003.

J. Patrick Biggs, Chief Public Defender, New Albany, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Ronald E. Brabandt appeals the revocation of his probation and imposition of his suspended sentence, raising the following two issues:

I. Whether the failure of a probation officer to . administer *Miranda* warnings prior to a probationer's admission of illegal drug use should exclude such admission from entry into evidence at the probationer's probation revocation hearing.

II. Whether Brabandt's confession was involuntary under the Fourteenth Amendment and Fifth Amendment to the United States Constitution such that its introduction at the probation revocation hearing constituted fundamental error.

We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

On April 3, 2001, Brabandt was charged with invasion of privacy, resisting law enforcement, criminal mischief, and two counts of battery resulting in bodily injury, as Class D felonies.[2] In exchange for Brabandt's guilty plea on the two battery counts, the State dropped the other three charges. The trial court sentenced Brabandt to one and one-half years on each battery conviction to be served consecutively. After giving him credit for time served, the trial court suspended the remaining two years and ten months of his sentence and placed him on probation.

Brabandt's Order of Probation required him to pay court costs and probationer's user fees and contained the following pertinent conditions:

1. Good behavior.

2. You shall make an appointment with the Probation Officer of this Court within 7 days from the sentence or release date. Thereafter, you shall report to him/her as he/she shall direct.

3. You must not commit another criminal offense.

 . . . .

5. You shall promptly notify your Probation Officer of any change in em-

---

1. We heard oral argument in this case in Jeffersonville, Indiana on September 18, 2003, before the Sherman Minton American Inn of Court. We thank our hosts for their gracious reception and commend counsel on the quality of their written and oral advocacy.

2.. *See* IC 35–42–2–1(a). It is not stated in the information, but testimony at the revocation hearing indicates that police officers were the victims of both batteries. *Appellant's Appendix* at 66.

ployment or address and shall answer all reasonable inquiries.

. . . .

13. You shall not use alcohol or drugs (controlled substances) unless prescribed by a physician.

. . . .

15. Urinalysis testing for drugs and alcohol at random intervals for term of probation. . . .

. . . .

17. Special Conditions: Take medication as prescribed by physician and Anger/Stress Management.

*Revocation Hearing, State's Exhibit 1.*

On November 19, 2001, the State filed its first Notice of Probation Violation in the Floyd Superior Court alleging that Brabandt violated his probation by: (1) failing to report to his probation officer as directed under term # 2; (2) failing to notify his probation officer of a change in address and telephone number under term # 5; and (3) failing to pay both court costs and probationer's user fees. *Appellant's Appendix* at 7. The State learned that Brabandt failed to comply with these terms because he was in the Harrison County Jail.[3] On April 24, 2002, the State and Brabandt agreed to resolve the probation violation by extending his probation for five additional months and by requiring Brabandt to complete alcohol and drug recommendations, complete an anger management course, and make an appointment

to see his probation officer within seven days. *Appellant's Appendix* at 13.

Thereafter, Collins received information from two sources that implicated Brabandt in illegal drug use. Collins confronted Brabandt with these drug-use allegations during Brabandt's October 10, 2002 probation appointment. During the same meeting, Collins performed a drug test on Brabandt, inspected his arms, and noted fresh needle marks. *Appellant's Appendix* at 35–36.

At the January 22, 2003 probation revocation hearing, Collins testified that, although Brabandt passed the drug test, he voluntarily signed an affidavit admitting to violating his probation ("Affidavit") by using Oxycontin on October 7, 2002, and further admitting to the use of alcohol. *Appellant's Appendix* at 36; *Revocation Hearing, State's Exhibit 2.* He also placed his initials on the Affidavit next to the statement, "I am making this statement of my own free and voluntary will." *Revocation Hearing, State's Exhibit 2.*

Brabandt testified that, although he took the drug test, he was not immediately told that he passed the test. Instead, by inspecting his arms and asking about drug use, Collins led him to believe that he had not passed the test. *Appellant's Appendix* at 57–58. Brabandt further testified that he was coerced to sign the Affidavit because Collins told him that signing the Affidavit would allow him to get treatment, while not signing would cause him to go to jail.[4] *Appellant's Appendix* at 58. Bra-

---

3. Although the testimony was somewhat unclear about Brabandt's Harrison County conviction, it appears that he pled guilty to intimidation and invasion of privacy sometime in 1999 and was placed on probation. Brabandt's guilty plea in this case caused his Harrison County probation to be revoked and sentence reimposed, *Appellant's Appendix* at 53, thus requiring Brabandt to serve the Harrison County sentence after Floyd County released him on probation in this case.

4. Although Brabandt asserts that Collins told him that if he did not sign the Affidavit he was going to jail, the following reflects the direct questioning at the probation revocation hearing:

Q Okay. Did [Collins] give you—did he tell you what the alternative would be to you signing that paper.

A Well, jail, I mean.

bandt signed the Affidavit and then left the office.

Sometime later, Brabandt met with Collins to report on his progress in treatment. Brabandt told Collins that he had attended one treatment meeting. Collins found this was insufficient and informed Brabandt that a second Notice of Probation Revocation would be filed. *Appellant's Appendix* at 59–60. On December 3, 2002, the State filed its second Notice of Probation Violation alleging that Brabandt: (1) failed to "abide by the directive of probation to seek treatment (anger/stress management) and follow their recommendations;" (2) failed to pay delinquent probationer's user fees; (3) failed to pay court costs; and (4) used controlled substances not prescribed by a physician. *Appellant's Appendix* at 14.

At the conclusion of the January 22, 2003 probation revocation hearing, the trial court revoked Brabandt's probation and reimposed his sentence to be served at the Floyd County Jail. Brabandt now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Probation is a criminal sanction wherein a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment. *Bonner v. State*, 776 N.E.2d 1244, 1247 (Ind.Ct.App. 2002), *trans. denied* (2003) (citing *Carswell v. State*, 721 N.E.2d 1255, 1258 (Ind.Ct. App.1999)). These restrictions are designed to ensure that the probation serves as a period of genuine rehabilitation and that the public is not harmed by a probationer living within the community. *Id.*

■ A defendant is not entitled to serve a sentence in a probation program; rather, such placement is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Cox v. State*, 706 N.E.2d 547, 549 (Ind.1999); *Davis v. State*, 743 N.E.2d 793, 794 (Ind.Ct.App.2001), *trans. denied.* Therefore, upon finding that a probationer has violated a condition of probation, a court may either continue probation, with or without modifying or enlarging the conditions, extend probation for not more than one year beyond the original probationary period, or order execution of the initial sentence that was suspended. IC 35–38–2–3(g).

■ A probation revocation hearing must be a narrow inquiry with flexible procedures that allow a court to exercise its "inherent power to enforce obedience to its lawful orders." *Cox*, 706 N.E.2d at 550. The decision whether to revoke probation is a matter within the sound discretion of the trial court. *Dawson v. State*, 751 N.E.2d 812, 814 (Ind.Ct.App.2001). A probation revocation hearing is civil in nature, and the State need only prove the alleged violations by a preponderance of the evidence. *Cox*, 706 N.E.2d at 551 (citing *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995)); *McKnight v. State*, 787 N.E.2d 888, 893 (Ind.Ct.App.2003). Generally, "viola-

Q Did he tell you what the alternative would be?
A No, I don't think he did. I can't remember. He said something about trying to
. . .
Q Do you recall having another meeting with your probation officer where you reported to him about having done something to take care of the recommendation that he made-
A Yeah.

Q —because of your signing the piece of paper that's State Exhibit 2?
A Yeah. I told him that I did go for my evaluation.
*Appellant's Appendix* at 58–59. Collins, when questioned as to whether he threatened to revoke Brabandt's probation if he did not sign the Affidavit, or whether he gave Brabandt the impression that he had failed the drug test to induce a confession, denied both allegations. *Appellant's Appendix* at 44–45.

tion of a single condition of probation is sufficient to revoke probation." *Pitman v. State,* 749 N.E.2d 557, 559 (Ind.Ct.App. 2001), *trans. denied.*

■ On review, our court considers only the evidence most favorable to the judgment without reweighing that evidence or judging the credibility of witnesses. *Packer v. State,* 777 N.E.2d 733, 740 (Ind.Ct.App.2002); *Piper v. State,* 770 N.E.2d 880, 882 (Ind.Ct.App.2002), *trans. denied.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation. *Cox,* 706 N.E.2d at 551; *Packer,* 777 N.E.2d at 740; *Piper,* 770 N.E.2d at 882.

*II. Miranda Warnings*

■ At the probation revocation hearing, Brabandt's Affidavit was admitted into evidence without objection. Generally, failure to object, and thus properly preserve an issue for appeal, results in waiver. *England v. State,* 670 N.E.2d 104, 105 (Ind.Ct.App.1996), *trans. denied* (1997) (citing *Randolph v. State,* 269 Ind. 31, 34, 378 N.E.2d 828, 831 (1978)). Our court nevertheless remedies an unpreserved error when a trial court commits fundamental error. *Id.* "Fundamental error is error such that, if not rectified, would be a denial of fundamental due process." *Bryce v. State,* 545 N.E.2d 1094, 1096 (Ind.Ct.App. 1989), *trans. denied* (1990) (citing *Foster v. State,* 484 N.E.2d 965, 967 (Ind.1985)). To avoid waiver, Brabandt argues that the trial court committed constitutional error that denied him fundamental due process.

Brabandt first contends that his statement in the Affidavit was taken in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and should not have been admitted into evidence or considered for any purpose at the probation revocation hearing. The State counters that Brabandt was not subjected to a custodial interrogation, and, therefore, the protections of *Miranda* could not be invoked.

■ The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that no person shall be compelled in any criminal case to be a witness against himself. *Grubb v. State,* 734 N.E.2d 589, 591 (Ind.Ct.App.2000), *trans. denied* (citing U.S. CONST. amend. V). "In order to protect the privilege against self-incrimination, the United States Supreme Court held in *Miranda v. Arizona* that incriminating statements made while the defendant is in custody and subject to interrogation may not be admitted into evidence unless the defendant waives his Fifth Amendment privilege after being warned of his right to remain silent and the consequences of his failure to do so." *Id.* (citing *Miranda,* 384 U.S. at 467–69, 475–77, 86 S.Ct. at 1624–25, 1628–29). Statements elicited in violation of *Miranda* are generally inadmissible in a criminal trial and subject to a motion to suppress. *Wright v. State,* 766 N.E.2d 1223, 1229 (Ind.Ct.App.2002) (citing *Loving v. State,* 647 N.E.2d 1123, 1125 (Ind. 1995)).

Recognizing that law enforcement officers are not required to give a defendant *Miranda* warnings unless the defendant is both in custody and subject to interrogation in connection with the investigation of a crime, *Green v. State,* 753 N.E.2d 52, 58 (Ind.Ct.App.2001), *trans. denied,* Brabandt argues, as he must, that his required attendance at the probation meeting constituted custody. He further asserts, "it is clear that the probation officer was not supervising [Brabandt's] probation, but was conducting a criminal investigation." *Appellant's Brief* at 8.

■ Thus, the initial *Miranda* inquiry is whether the defendant was "in

custody" at the time of questioning.[5] *Morales v. State*, 749 N.E.2d 1260, 1265 (Ind. Ct.App.2001). A criminal defendant is deemed in custody if a reasonable person in the same circumstances would not feel free to leave. *Luna v. State*, 788 N.E.2d 832, 833 (Ind.2003) (citing *Cliver v. State*, 666 N.E.2d 59, 66 (Ind.1996)); *Morales*, 749 N.E.2d at 1265. Whether a person was in custody depends upon "objective circumstances," not upon the subjective views of the interrogating officers or the subject being questioned. *Loving*, 647 N.E.2d at 1125 (citing *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293, 298 (1994) (per curiam)); *Morales*, 749 N.E.2d at 1265.

In *Luna*, our supreme court recently addressed the issue of what constitutes custody for the purposes of *Miranda*. Luna, who was suspected of child molestation, drove himself to the police station, at the police's request, to give "his side of the story." *Luna*, 788 N.E.2d at 833. The police did not read him his *Miranda* rights but told him that he was not under arrest and could leave at any time. Luna was questioned in an area that required a punch code to enter, but no punch code to exit. The first part of the questioning lasted thirty-five minutes and was not recorded. The police questioned whether Luna was being honest, and he finally confessed. The trial court denied his pretrial motion to suppress the confession, and he was convicted of child molesting. Our court reversed Luna's conviction finding that he was in custody and that his statements made without *Miranda* warnings should have been suppressed. The supreme court, reversing our court, affirmed Luna's conviction concluding that, under the objective test, a reasonable person in Luna's shoes would not have believed himself " 'under arrest or not free to resist the entreaties of the police.' " *Luna*, 788 N.E.2d at 834 (quoting *Torres v. State*, 673 N.E.2d 472, 474 (Ind.1996)).

We recognize that *Luna* did not involve an issue of probation revocation, and, unlike Luna, Brabandt was not being questioned for a new criminal charge. Nevertheless, our supreme court's analysis of custody for purposes of *Miranda* mandates our conclusion that, under the facts of this case, Brabandt was not in custody. Brabandt had participated in probation programs and faced revocation proceedings in both Floyd and Harrison Counties and was familiar with probation offices and their procedures. Brabandt's presence at the probation meeting was a prerequisite to his conditional liberty. Here, although Collins failed to assure Brabandt that he was not under arrest, Brabandt had arrived at the office on his own, unaccompanied by any government official. The record before us contains no evidence that Brabandt was behind locked doors or restrained in any fashion while attending his probation meeting. Furthermore, when the meeting was over, Brabandt left the office and remained free for two more months until he was arrested on December 17, 2002 for probation violations.

Here, Brabandt was neither in formal custody nor was his freedom of action lim-

---

**5.** In *Alspach v. State*, 440 N.E.2d 502, 505 (Ind.Ct.App.1982), our court held:

> *Miranda* warnings need not be given by probation officers legitimately engaged in the supervision of probationers when a) the probationer is not in custody, b) the interrogation is reasonably related to the officer's duty to supervise the probationer, and, c) the questioning is reasonable under all the circumstances, including the length of time and hour of the day or night it is conducted, the manner in which it is conducted, the persons present during questioning, and the place where it is conducted.

Because the issue of whether Brabandt was in custody is dispositive, we do not reach the questions whether conditions (b) and (c) were met.

ited in any significant way when he made his confession at the probation meeting. A reasonable person in Brabandt's shoes would not have believed himself under arrest or not free to resist the entreaties of the probation officer. *Luna*, 788 N.E.2d at 833.[6] We therefore find that Brabandt's confession to his probation officer was not taken in violation of *Miranda*.

### III. Constitutional Voluntariness of Brabandt's Confession

Brabandt also argues that with or without a *Miranda* warning, the Fourteenth and Fifth Amendments to the United States Constitution prevent a confession from being admitted into evidence unless it is voluntary. Brabandt asserts that his confession was not voluntary because Collins used deceit to obtain it and did not tell Brabandt that it could be used against him in a probation revocation hearing. Further, he argues that, because there was no objection, the trial judge could not evaluate the voluntariness of the confession.[7]

■■■■ The admissibility of an incriminating statement is not determined solely by application of the *Miranda* rules. Where, as here, the defendant was not in custody, an admission may be excluded because it was made involuntarily. *A.A. v. State*, 706 N.E.2d 259, 262 (Ind.Ct.App. 1999). The Fourteenth Amendment to the United States Constitution incorporates the Fifth Amendment privilege against self-incrimination. *Garmon v. State*, 775

N.E.2d 1217, 1219 (Ind.Ct.App.2002) (citing *Withrow v. Williams*, 507 U.S. 680, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993)). Therefore, to be admissible consistent with these provisions, a suspect's statement must be voluntarily given. *Garmon*, 775 N.E.2d at 1219–20. A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. *A.A.*, 706 N.E.2d at 262. The critical inquiry is whether the defendant's statements were induced by violence, threats, promises, or other improper influence. *Id.* Stated differently, "the relevant inquiry is whether the challenged police conduct induced a confession which was not freely self-determined." *Id.*

Here, Brabandt argues that his compulsion was the threat that he would be put in jail if he did not sign the Affidavit. At the revocation hearing Brabandt was asked if Collins told him what the alternative was to signing the paper. First Brabandt answered that Collins threatened jail. He immediately clarified by saying, "No I don't think he did. I can't remember. He said something about trying to...." *Appellant's Appendix* at 58. This equivocation fails to support an assertion of coercion.

■■■■ The general obligation to appear and answer questions truthfully does not convert otherwise voluntary state-

---

6. At oral argument, Brabandt's counsel argued that a probation officer is an agent of the state who must give *Miranda* warnings under any conditions akin to custodial interrogation. Concluding that Brabandt was not in custody, we do not reach the question of whether Collins was, in this case, a law enforcement officer under the meaning of *Miranda*.

7. We note that Brabandt initialed a statement on the Affidavit verifying that his confession was being made voluntarily. Furthermore, contrary to Brabandt's assertions, the trial court did judge the voluntariness of his statement. Finding that Brabandt had violated his probation, the trial court concluded, "You did sign a document, although you're denying it today, you signed it, and I don't believe there's any coercion of that at all." *Appellant's Appendix* at 77.

ments into compelled statements. *State v. Shepherd*, 569 N.E.2d 683, 686 (Ind.Ct. App.1991) (citing *Minnesota v. Murphy*, 465 U.S. 420, 427, 104 S.Ct. 1136, 1142–43, 79 L.Ed.2d 409 (1984)). The Fifth Amendment speaks of compulsion; it does not preclude a witness from testifying voluntarily in matters that may incriminate him. *Id.* Therefore, " 'if a witness under compulsion to testify makes disclosures instead of claiming the [Fifth Amendment] privilege, the government has not 'compelled' him to incriminate himself. *Id.* An individual may lose the benefit of the privilege without making a knowing and intelligent waiver." *Id.* (citing *Garner v. United States*, 424 U.S. 648, 654, n. 9, 96 S.Ct. 1178, 1182, n. 9, 47 L.Ed.2d 370 (1976)). Here, as a probationer reporting on his progress, Brabandt was compelled to tell the truth. Choosing to sign the Affidavit instead of claiming his Fifth Amendment right did not, without more, make Brabandt's statement involuntary. *See also McKnight*, 787 N.E.2d at 891 ("while a probationer may invoke his Fifth Amendment privilege against self-incrimination with regard to any questions that may incriminate him in a subsequent criminal prosecution, he is not entitled to invoke the privilege with regard to basic identifying information and any disclosures that are necessary to effectively monitor his probation").

Brabandt was neither in custody nor coerced to admit that he used illegal drugs in violation of the terms of his probation. Finding no error, fundamental or otherwise, in the trial court's use of the confession, we affirm the revocation of Brabandt's probation.

Affirmed.

BAKER, J., and RILEY, J., concur.