In the Matter of P.M., Appellant–Respondent,

v.

STATE of Indiana, Appellee.

No. 49A02–0605–JV–00434.

Court of Appeals of Indiana.

Feb. 16, 2007.

Elizabeth Gamboa, Franklin, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, P.M., was adjudicated a delinquent child for committing an act which would be Theft as a Class D misdemeanor if committed by an adult.[1] In appealing his adjudication, P.M. claims that the juvenile court abused its discretion in admitting into evidence certain incriminating statements which were allegedly obtained in violation of his constitutional right against self-incrimination.

We affirm.

The record reveals the following facts. On November 17, 2005, at approximately 7:00 a.m., Jason McKeeman, an electrician for Moorehead Electric Company, appeared at his construction work site at 9010 East Southport Road to find that the lights, which had been turned on the night before, were off, and several items, including wire belonging to Moorehead Electric, were missing from the site. According to McKeeman, several spools of wire, including 1000 feet of "copper bare wire" and 2500 feet of "number 10 wire" were missing. Tr. at 11. Also missing were batteries, tools, and coveralls belonging to Johnson Melloh Mechanical Contractors, and tools, radios, paint, and tape belonging to Complete Masonry Services, Inc.

---

1. See Ind.Code § 35–43–4–2 (Burns Code Ed. Repl.2004).

Upon investigating the incident, Marion County Sheriff's Deputy Robert Dillon received word that some of the allegedly stolen items were possibly located at Capital City Metals[2] after attempts had been made to sell them for salvage value, so he and McKeeman went to Capital City Metals. There, McKeeman found and identified "everything that [he] had described" as missing, including the bare copper wire. According to McKeeman, the two "gentlemen" who had brought the wire to Capital City Metals, one of whom was P.M., were present on the scene, as were uniformed police officers. McKeeman testified that he and P.M. and at least one uniformed police officer, who was standing approximately five feet away, were in the main office[3] of Capital City Metals when he asked P.M., out of curiosity, how they were able to move the 1000–foot spool of wire up into their truck, given its weight. According to McKeeman, P.M. responded that it had not been easy, but that they had "worked together" and used wooden steps to roll it into the back of a truck. Tr. at 18. Shortly thereafter, Deputy Dillon read P.M. his Miranda rights.[4] Deputy Dillon indicated that he did not interview P.M. because he did not have a parent present to sign a juvenile waiver.

After speaking with P.M. and his parents, Deputy Dillon went to their home, where he recovered items matching the description of items listed as missing from the construction site. Although Deputy Dillon could not recall what those items were, nor did he have a list of them, he testified that P.M.'s father had stated they were not his, and the various businesses whose property was found missing from the construction site identified the items as belonging to them.

On January 23, 2006, the State filed a delinquency petition based upon the crime of theft as a Class D felony if committed by an adult. Following a March 24, 2006 denial hearing, the juvenile court made a true finding of P.M.'s delinquent act with respect to the items taken from Moorehead Electric only. The court placed P.M. on probation.

Upon appeal, P.M. challenges the juvenile court's true finding of delinquency by claiming that the police failed to advise him of his Miranda rights before he made the incriminating statements at issue, and that these statements were therefore admitted in violation of his right against self-incrimination.

■ P.M. is appealing from a completed adjudication hearing and challenges the admission of the evidence at the hearing. Therefore, the issue is " 'appropriately framed as whether the juvenile court abused its discretion by admitting the evidence ....' "[5] *Hirshey v. State*, 852 N.E.2d 1008, 1012 (Ind.Ct.App.2006) (quoting *Collins v. State*, 822 N.E.2d 214, 218 (Ind.Ct. App.2005)), *trans. denied*. Our standard of review on the admissibility of the evidence " 'is essentially the same whether

2. The more accurate designation of this entity may be Capitol City Metals, LLC.

3. McKeeman testified that the office was approximately "10 × 15." Tr. at 16.

4. Although, as both parties acknowledge, it is unclear from the record whether P.M. received his Miranda rights before or after his incriminating statements, Deputy Dillon acknowledged that P.M. could not have waived his Miranda rights because he was a juvenile

and no counsel or parent was present "to sign the juvenile waiver." Tr. at 36.

5. Although the dispositional hearing is not technically a "trial," the principles concerning evidentiary procedures in criminal trials are applicable. *See N.W. v. State*, 834 N.E.2d 159 (Ind. Ct.App.2005), *trans. denied; J.V. v. State*, 766 N.E.2d 412 (Ind.Ct.App.2002), *trans. denied*.

the challenge is made by a pre-trial motion to suppress or by trial objection.' " *Id.* (quoting *Collins,* 822 N.E.2d at 218). " 'We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling.' " *Id.* (quoting *Collins,* 822 N.E.2d at 218). " 'However, we must also consider the uncontested evidence favorable to the defendant.' " *Id.* (quoting *Collins,* 822 N.E.2d at 218). We affirm the trial court's ruling if it is supported by substantial evidence of probative value. *Id.*

Under the Fifth Amendment to the United States Constitution and Article 1, Section 14 of the Indiana Constitution, persons shall be free from being compelled to make disclosures which might subject them to criminal prosecution or aid in their conviction. *Hastings v. State,* 560 N.E.2d 664, 667 (Ind.Ct.App.1990), *trans. denied.* In protection of the right against self-incrimination, the United States Supreme Court's opinion in *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) established that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Such procedural safeguards include an advisement to the accused that he has the right to remain silent, that anything he says can be used against him, that he has the right to an attorney, and that if he cannot afford an attorney one will be appointed for him. *Id.* at 479. Miranda warnings are only required, however, where a suspect is both in custody and subjected to interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). To determine whether a defendant is in custody, we ask whether a reasonable person under the

circumstances would consider himself free to resist the entreaties of the police. *White v. State,* 772 N.E.2d 408, 412 (Ind. 2002). Under *Miranda,* "interrogation" includes express questioning and words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect. *Id.* (citing *Rhode Island,* 446 U.S. at 301, 100 S.Ct. 1682).

In ruling that P.M.'s incriminating statements were admissible, the juvenile court stated the following:

> "The Court does not see any association of the witness and a police officer. There's been no evidence to show that the police officer was directing the witness to ask questions. The witness simply asked a question. There's no need for a parent or guardian to be present at that time. Your motion to suppress any statements made by the Respondent to the questions by Mr. McKeeman, that motion is denied." Tr. at 18.

In responding to P.M.'s challenge to the admission of his statements on the basis that the State failed to advise him of his Miranda rights, the State does not dispute P.M.'s claim that he was in custody. As the State concedes, P.M. was detained in an office at Capital City Metals by police officers at the time he made his incriminating statements. Appellee's Brief at 5. It is the State's argument, however, that P.M. was not being subjected to interrogation at the time of his statements. As the State points out, it was McKeeman who asked P.M. a question, and there was no evidence that McKeeman was acting as an agent for the authorities in asking it.

We find no abuse of discretion by the juvenile court in ruling P.M.'s statements to be admissible. The only basis upon which P.M. argued that he was being subjected to custodial interrogation was that there were police officers present

when McKeeman asked his question. As the juvenile court found, there was no evidence McKeeman was acting on behalf of the authorities. Indeed, as McKeeman testified, he was acting of his own volition and asking a question out of mere curiosity. The nature of his question—how, physically, could P.M. and his cohort maneuver such heavy spools—bears this out, and the juvenile court found him to be credible. We are unconvinced that the mere presence of police officers when a private party asks a single question rises to the level of custodial interrogation triggering the Miranda protections. *See G.J. v. State,* 716 N.E.2d 475, 477 (Ind.Ct.App.1999) (questioning by school dean not custodial interrogation triggering Miranda safeguards); *S.A. v. State,* 654 N.E.2d 791, 797 (Ind.Ct.App.1995) (questioning by school vice-principal not custodial interrogation triggering Miranda safeguards), *trans. denied.* Additionally, because we have found P.M. was not being interrogated, and thus not entitled to the advisement of his Miranda rights, the protections of Indiana Code § 31–32–5–1 (Burns Code Ed. Repl.2003), which dictate that a child may waive his guaranteed rights only by counsel or his parents, do not apply. *See G.J.,* 716 N.E.2d at 477.

To the extent P.M. argues that, regardless of the applicability of Miranda protections, his statements were involuntary, we note that coercive police activity is a necessary prerequisite to finding a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. *A.A. v. State,* 706 N.E.2d 259, 262 (Ind.Ct.App.1999). The critical inquiry is whether, upon considering the totality of the circumstances, a defendant's statements were induced by violence, threats, promises or other improper influence. *Id.* Apart from the facts that P.M. was in custody and police officers were present when P.M. made his statements, P.M. presents no other reasoning tending to suggest that his statements, in response to a single question by a private party, were somehow induced or not the product of his own free will. The facts of this case simply do not demonstrate that P.M.'s incriminating statements were involuntary, and we find no abuse of discretion by the juvenile court in admitting them at the hearing.

The judgment of the juvenile court is affirmed.

SHARPNACK, J., and CRONE, J., concur.