**STATE of Indiana, Appellant–
Petitioner,**

**v.**

**C.D., Appellee–Respondent.**

**No. 55A01–1007–JV–342.**

Court of Appeals of Indiana.

May 2, 2011.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

Petitioner–Appellant State of Indiana appeals the trial court's grant of Respondent–Appellee C.D.'s motion to suppress evidence. We reverse and remand.

### ISSUE

The State raises one issue, which we restate as: whether the trial court erred when it granted C.D.'s motion to suppress evidence.

### FACTS AND PROCEDURAL HISTORY

On January 8, 2010, personnel working in the central office at Mooresville High School received a report from a teacher that a student appeared to be under the influence of some substance. The student, C.D., was brought to the office of Assistant Principal Timothy Vanwanzeele. Vanwanzeele, who had interacted with C.D. on prior occasions, noted that C.D.'s speech and mannerisms were "slower than normal." Tr. p. 27. At that point, Vanwanzeele requested the presence of Officer Chad Richhart. Richhart was a security officer employed by the school system. However, Richhart was also an officer with the Mooresville Police Department, and on that day he was wearing his Mooresville Police Department uniform.

When Richhart arrived at Vanwanzeele's office, Vanwanzeele asked him to examine C.D. to determine whether C.D. was under the influence of drugs. Richhart is a "drug recognition evaluator" and, by putting an individual through a series of tests, can determine what kind of substance a person may have taken. Tr. p. 8. The examination took place in Vanwanzeele's office, and Vanwanzeele, C.D., and Richhart were the only persons present. Richhart observed that C.D. was very lethargic. Furthermore, C.D.'s eyes were bloodshot and his pupils were dilated. Richhart asked C.D. to open his mouth and noted that C.D. had heat bumps on his tongue, which is consistent with smoking something hot. Next, Richhart had C.D. perform some balance tests. Finally, Richhart asked C.D. if he was on prescription medication, if he had contact lenses in his eyes, and if he had any medical problems with his hips, legs, knees, or ankles. The examination took ten minutes. When Richhart was finished, he told Vanwanzeele that he thought C.D. was under the influence of marijuana and had smoked it that day. C.D. stated that he hadn't smoked marijuana that day but had smoked some the previous night. Vanwanzeele told C.D. he would be suspended from school. Next, Vanwanzeele searched C.D.'s backpack and discovered two pills that were identified as Adderall, a controlled substance. Vanwanzeele gave the pills to Richhart. Subsequently, Vanwanzeele contacted C.D.'s mother.

The State filed a delinquency petition against C.D., alleging that C.D. committed an act that would constitute possession of a

controlled substance on school property, a Class C felony, if committed by an adult. Ind.Code § 35–48–4–7(a)(2) (2001). C.D. filed a motion to suppress, and the trial court held a hearing. After the hearing, the trial court issued an order ruling inadmissible all evidence "obtained from the child prior to the child and parent having an opportunity for meaningful consultation outside the presence of school officials and the police...." Appellant's App. p. 19. Subsequently, the State filed a motion to dismiss the case without prejudice, which the trial court granted. This appeal followed.

### DISCUSSION AND DECISION

### I. STANDARD OF REVIEW

■ The State appeals pursuant to Indiana Code section 35–38–4–2(5) (1983), which provides that the State may appeal from "an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution." In the appellate review of a trial court's motion to suppress, the reviewing court determines whether the record discloses substantial evidence of probative value that supports the trial court's decision. *State v. Washington*, 898 N.E.2d 1200, 1203 (Ind.2008). We do not reweigh evidence. *Id.* The State, appealing from a negative judgment, must show that the trial court's ruling on the suppression motion was contrary to law. *Id.*

■ We note that C.D. did not file an Appellee's Brief. When the appellee does not file a brief, we apply a less stringent standard of review and may reverse the trial court when the appellant establishes prima facie error. *State v. Combs*, 921 N.E.2d 846, 850 (Ind.Ct.App.2010). "Prima facie" is defined as "at first sight, on first appearance, or on the face of it." *Id.* This rule is not intended to benefit the

appellant, but rather to relieve this Court of the burden of developing arguments on behalf of the appellee. *State v. Moriarity*, 832 N.E.2d 555, 558 (Ind.Ct.App.2005). The burden of demonstrating trial court error remains with the appellant. *Combs*, 921 N.E.2d at 850.

C.D.'s motion to suppress raised two claims: (1) Vanwanzeele and Richhart erroneously interrogated C.D. without giving him an opportunity to consult with his parents; and (2) Vanwanzeele erroneously searched C.D.'s backpack without a warrant. The State challenges each point on appeal, and we address each in turn.

### II. C.D.'S INCRIMINATING STATEMENTS

■ Under the Fifth Amendment to the United States Constitution, persons shall be free from being compelled to make disclosures which might subject them to criminal prosecution or aid in their conviction. *P.M. v. State*, 861 N.E.2d 710, 713 (Ind.Ct.App.2007). In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the United States Supreme Court established procedural safeguards to protect criminal defendants against compelled disclosure of incriminating statements. However, constitutional protections against self-incrimination can be waived. Indiana Code section 31–32–5–1 (1997) governs a juvenile's waiver of his or her rights, and it provides, in relevant part:

Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived only:

(1) by counsel retained or appointed to represent the child if the child knowingly and voluntarily joins with the waiver;

(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:

(A) that person knowingly and voluntarily waives the right;

(B) that person has no interest adverse to the child;

(C) meaningful consultation has occurred between that person and the child; and

(D) the child knowingly and voluntarily joins with the waiver; . . . .

Strict compliance with Indiana Code section 31–32–5–1 (1997) is required to safeguard the rights of juveniles. *See Foster v. State,* 633 N.E.2d 337, 347 (Ind.Ct.App. 1994), *trans. denied* (discussing a predecessor statute of Ind.Code § 31–32–5–1).

 The *Miranda* warnings and the safeguards set forth in Indiana Code section 31–32–5–1 (1997) apply only to a juvenile who is subjected to custodial interrogation. *See P.M.,* 861 N.E.2d at 713 (discussing *Miranda* warnings); *G.J. v. State,* 716 N.E.2d 475, 477 (Ind.Ct.App. 1999) (discussing Ind.Code § 31–32–5–1). To determine whether a person is in custody, we ask whether a reasonable person under the circumstances would consider himself or herself free to resist the entreaties of the police. *P.M.,* 861 N.E.2d at 713. Under *Miranda,* "interrogation" includes express questioning and words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect. *Id.*

In *G.J.,* 716 N.E.2d at 476, the police told school officials they had heard that G.J. had brought marijuana to school. On that same day, G.J. was brought to the dean's office, where the dean asked G.J. if he had marijuana. In response, G.J. pulled a vial of marijuana from his pants pocket. On appeal, G.J. argued that the dean should not have questioned him without providing him with a meaningful opportunity to consult with his parents. *Id.* at 477. We disagreed, determining that G.J. was not subjected to custodial interrogation when the dean questioned him. G.J. was questioned in his school by a school official. Consequently, the *Miranda* safeguards and the safeguards set forth in Indiana Code section 31–32–5–1 (1997) did not apply. *See id.*

In this case, a school employee brought C.D. to Vanwanzeele's office. Vanwanzeele conceded that C.D. was not free to leave after he entered the office, but Vanwanzeele contended that the purpose of his detention of C.D. was to "maintain school order" by ensuring that an impaired individual was not in the classroom. Tr. p. 39. C.D.'s speech and mannerisms seemed "slower than normal" to Vanwanzeele, so he summoned Richhart. Tr. p. 27. Richhart, who was in his police uniform, evaluated C.D. for drug influence at Vanwanzeele's request. The evaluation consisted of a physical examination and questions about prescription drugs, contact lenses, and medical problems with his hips, legs, knees, or ankles. Richhart told Vanwanzeele that he thought C.D. was under the influence of marijuana and had smoked it that day. At that point, C.D. asserted that he had smoked marijuana the previous evening but not that day.

We conclude that this case resembles that of *G.J.* The environment in which C.D. was questioned was no more coercive than in *G.J.,* as both were questioned at school. C.D. was not free to leave Vanwanzeele's office, but he was detained by Vanwanzeele for an educational purpose, which was to keep possibly intoxicated students out of the classroom. Furthermore, C.D. admitted to drug use without being directly questioned on that point by Richhart or Vanwanzeele. After the examination, Van-

wanzeele told C.D. he would be suspended from school, which further demonstrates that C.D.'s examination was intended to carry out an educational function or school purpose, not to further a criminal investigation.

We note that in C.D.'s case, unlike in *G.J.*, C.D. was examined by a school security officer in police uniform rather than a school administrator. Under the circumstances of this case, we conclude that this difference is not significant. Richhart was not independently investigating the matter. Instead, Richhart examined C.D. at Vanwanzeele's request and in Vanwanzeele's presence. Furthermore, after the examination was complete, Vanwanzeele did not immediately ask Richhart to take C.D. into custody but instead advised C.D. that he would be suspended. This evidence indicates that Richhart was acting to fulfill an educational purpose. Therefore, the fact that Richhart, rather than Vanwanzeele, examined and questioned C.D. did not transform the examination into a custodial interrogation. *See T.S. v. State*, 863 N.E.2d 362, 371 (Ind.Ct.App.2007), *trans. denied* (determining, in the context of a student's challenge to being seized by a school security officer, that a search and seizure by a school security officer is reviewed pursuant to a less-stringent standard if the officer was "acting to further educationally related goals").

Consequently, we conclude that C.D. was not undergoing custodial interrogation when he answered Richhart's questions and made an incriminating admission, and the *Miranda* warnings and safeguards in Indiana Code section 31–32–5–1 (1997) are inapplicable here. Thus, C.D. was not deprived of his right to meaningful consultation with his parents when Richhart examined him.

## III. THE SEARCH OF C.D.'S BACKPACK

School children have a legitimate expectation of privacy in items of personal property carried on campus. *Myers v. State*, 839 N.E.2d 1154, 1159 (Ind.2005). Where, as here, a school official initiates a search of a student's personal property, the search must be reasonable under the circumstances. *See id.* at 1160. To determine whether a school search is reasonable under the Fourth Amendment, we consider: (1) whether the action was justified at its inception; and (2) whether the search conducted was reasonably related in scope to the circumstances that justified the interference in the first place. *Id.*

In this case, C.D. appeared impaired to Vanwanzeele, and Richhart told Vanwanzeele that he thought that C.D. was under the influence of marijuana and had smoked it that day. Based on this information, a search of C.D.'s backpack for controlled substances was justified, and the search was reasonably related in scope to the circumstances. Having been informed that C.D. was, in Richhart's opinion, presently under the influence of marijuana, it was reasonable for Vanwanzeele to check C.D.'s backpack for more marijuana or for paraphernalia. *See T.S.*, 863 N.E.2d at 377 (determining that an officer's removal of a student from class and questioning the student as to whether he had drugs did not violate the Fourth Amendment because the officer had received an anonymous tip that the student had drugs on his person that day).

We conclude that the State has demonstrated prima facie error, and the trial court's suppression of all evidence obtained prior to C.D.'s consultation with his parents is contrary to law.

## CONCLUSION

For the reasons stated above, we reverse the judgment of the trial court and

remand for further proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., and CRONE, J., concur.