v.

**STATE of Indiana, Appellee–Petitioner.**

No. 49A04–9502–JV–47.

Court of Appeals of Indiana.

Aug. 9, 1995.

Transfer Denied Oct. 11, 1995.

Andrew W. Swain, Indianapolis, for appellant.

Pamela Carter, Attorney General of Indiana and Jody Kathryn Rowe, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Respondent–Appellant S.A., a juvenile, appeals from a juvenile adjudication finding him to be a delinquent child for committing the act of theft, a Class D felony [1] if committed by an adult.

We affirm.

### ISSUES

S.A. raises two issues which we re-state as follows:

 1. Whether the juvenile court properly denied S.A.'s motion to suppress evidence

---

1. IND.CODE 35–43–4–2 (1988).

and any testimony regarding the evidence obtained in a warrantless search of S.A.'s school locker and book bag.

2. Whether the juvenile court properly denied S.A.'s motion to suppress his statements made during questioning by the school vice-principal and S.A.'s father.

## FACTS AND PROCEDURAL HISTORY

Beginning in October of 1993, Howe High School experienced a rash of student locker break-ins, with the similar characteristic that the lockers were undamaged. During this time, the school's guidance director noticed that the master locker combination book was missing from her office. On February 9, 1994, D.N., a student at Howe, gave Officer Maurice Grooms of the Indianapolis Public School Police Department ("IPS PD"), the names of students he believed had stolen the school's locker combination book.

Based on this information, Officer Grooms obtained the locker numbers and combinations belonging to the students targeted by D.N. and searched these students' lockers, including S.A.'s. This search proved fruitless.

The following day, D.N. returned to Grooms' office and informed him that S.A. had the missing book in his blue book bag. Shortly thereafter, Grooms received another locker theft report. This prompted him to contact his assistant, Jerry Crawford, and instruct Crawford to remove S.A. from his regularly scheduled class and escort him to vice-principal Bruce Beck's office. Grooms further instructed Crawford to make sure that S.A. had his book bag with him.

S.A. did not have his book bag with him in class, so Crawford escorted him first to his locker to retrieve the bag and then to Beck's office. Upon arriving at the office, S.A. sat down and put the bag on the floor. After a few minutes, Grooms asked S.A. to step outside. After S.A. left, Crawford told Grooms that while S.A. was getting the bag from his locker, S.A. put the missing book in the bag. At this time, Crawford reached into S.A.'s book bag and pulled out the book.

Grooms then questioned S.A. as to whether he had school property. S.A. repeatedly

denied any involvement. When S.A. was confronted with the book, he said that he found it. Eventually, after S.A.'s father arrived, S.A. admitted to taking the book and some jackets from student lockers.

A petition alleging delinquency was filed by the State on March 15, 1994, alleging that S.A. committed acts which would be crimes if committed by an adult, to-wit: two counts of theft as Class D felonies. S.A. filed a motion to suppress in the juvenile court on July 13, 1994, and the court held a hearing on the motion that same day. Specifically, S.A. sought to suppress all evidence and statements obtained as a result of the search of his school locker and book bag and the "un-Mirandized" questioning. On September 9, 1994, the juvenile court denied S.A.'s motion without making specific findings of fact or conclusions of law.

On October 21, 1994, S.A. entered into a plea agreement wherein he pled guilty to one count of theft. After holding a hearing on the guilty plea, the court accepted the plea agreement and adjudicated S.A. a delinquent child. He was sentenced to probation. S.A. now appeals from the juvenile court's denial of his motion to suppress.

## DISCUSSION AND DECISION

### I. Search and Seizure

S.A. first contends that the trial court erred in denying his motion to suppress the combination book illegally seized from his book bag. Specifically, S.A. argues that IPS PD Officer Grooms and his agent Jerry Crawford made an illegal warrantless search of his book bag and school locker.

■ The trial court has broad discretion in ruling on the admissibility of evidence. We will not disturb its decision absent a showing of an abuse of that discretion. *Moore v. State* (1994), Ind.App., 637 N.E.2d 816, 818, *trans. denied, cert. denied, Moore v. Indiana* (1995), —— U.S. ——, 115 S.Ct. 1132, 130 L.Ed.2d 1093.

■ Our State constitutional provision against unreasonable search and seizure provides as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Article I, section 11, Ind. Const. The Indiana provision is virtually identical to the Fourth Amendment to the United States Constitution. Generally, a judicially issued search warrant is a condition precedent to a lawful search. *Thompson v. Louisiana* (1984), 469 U.S. 17, 19–20, 105 S.Ct. 409, 410–11, 83 L.Ed.2d 246; *Johnson v. State* (1993), Ind.App., 617 N.E.2d 559, 565. However, searches conducted by school officials in a school setting are subject to a less stringent standard.

 The leading case governing searches conducted by public school officials is *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720. In *T.L.O.*, the Supreme Court announced that school officials are not merely *in loco parentis*, but rather they are state actors fulfilling state objectives. As such, the standard Fourth Amendment prohibition against unreasonable searches and seizures applies to searches conducted by these state actors. *T.L.O.*, 469 U.S. at 336–37, 105 S.Ct. at 740. However, in balancing the privacy interests of school children against the need for teachers and administrators to maintain order in the public schools, the Court deviated from strict adherence to the probable cause and warrant requirements. *Id.* at 341, 105 S.Ct. at 742. Rather, the Court concluded that the legality of a student search by a school official will depend simply on the reasonableness of the search, under all of the circumstances. *Id.*

 The Court adopted a two-prong test. First, the search must be justified at its inception. Under ordinary circumstances, a student search will be justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student is or has violated either the law or a school rule. Second, the search must be reasonably related in scope to the circumstances which justified the initial interference. A search will be permissible in scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction. *Id.* at 341–42, 105 S.Ct. at 742–43. Indiana has adopted the rule as set forth in *T.L.O.* in *Berry v. State* (1990), Ind.App., 561 N.E.2d 832, wherein we held that the school principal's search of a student's jacket was reasonable under the totality of the circumstances.

 S.A. argues that *T.L.O.* is inapplicable to his situation, because his search was conducted by a police officer rather than a school official. We disagree. While Officer Grooms is a trained police officer, he was acting in his capacity as security officer for the IPS schools. Grooms is employed by the IPS PD and as such, his conduct regarding student searches on school premises is governed by the test announced in *T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720. Similarly, Crawford is a paraprofessional employed by IPS to assist in the administration of the school. Mr. Beck is Crawford's direct superior and had assigned Crawford to aid Grooms with school security issues.

The school authorities first made a limited preliminary inspection of S.A.'s locker. A student locker is the property of the school corporation and as such the student has no expectation of privacy in that locker or its contents. I.C. 20–8.1–5–17 (1988). IPS has promulgated its rules in accordance with Indiana statutes and precedent. The IPS policy regarding searches of students and their lockers is clearly articulated in the Howe High School Student Handbook, IPS Policies & Procedures Manual and the IPS Calendar/Handbook, and accurately reflects the reasonable suspicion standard announced in *T.L.O.*.

 Clearly, following *T.L.O.*, school officials are permitted to make warrantless searches. 469 U.S. at 340, 105 S.Ct. at 742. Based on the totality of the circumstances, we find that the search of S.A.'s book bag was reasonable. At the time Officer Grooms directed Crawford to bring S.A. with his book bag to vice-principal Beck's office,

Grooms possessed information that the missing combination book could be found in S.A.'s blue book bag. Based on this information, coupled with the rash of locker break-ins, we find that reasonable grounds existed to suspect S.A. of unlawful behavior. Thus, the search was justified at its inception.

We further find that the search was permissible in scope. After S.A. was asked to leave Beck's office, Crawford and Grooms discussed with Beck the information obtained by their student informant. Crawford informed Beck and Grooms that he had seen the combination book in S.A.'s book bag. At this time, in the presence of Beck, Crawford reached into S.A.'s book bag on the floor and removed the combination book. The search was reasonable in its scope because it was confined to the book bag and the school officials had ample information to believe that they would find the missing book in S.A.'s blue book bag. *See Berry,* 561 N.E.2d at 837 (school official's search of student's jacket was reasonable in scope because student's jacket was likely place to find marijuana).

## II. Custodial Interrogation

S.A. next contends that the trial court erred in denying his motion to suppress his involuntary, un-Mirandized statements made during custodial interrogation.

When a criminal defendant challenges the admissibility of his statements as involuntary by filing a motion to suppress, the trial court is required to conduct a hearing outside the presence of the jury to make a reliable and clear cut determination that the statements and waivers of rights were voluntarily given. *Grimm v. State* (1990), Ind.; 556 N.E.2d 1327, 1330. However, in the juvenile setting, because the juvenile court judge sits as the sole finder of fact, the judge rules on the voluntariness and admissibility of a confession.

When reviewing the denial of a motion to suppress a confession, we do not reweigh the evidence. Rather, we consider all uncontroverted evidence together with any conflicting evidence that supports the trial court's decision. *Buie v. State* (1994),

Ind., 633 N.E.2d 250, 256, *reh'g denied.* We will not disturb the trial court's ruling if there is substantial evidence of probative value from which the trial court could reasonably have concluded beyond a reasonable doubt that the confession and waiver of rights were freely and voluntarily made. *Grimm,* 556 N.E.2d at 1330. The burden rests on the State to show beyond a reasonable doubt that a defendant knowingly, intelligently and voluntarily waived his rights under *Miranda. Id.*

The Indiana Supreme Court has recently summarized the applicable law regarding challenges to statements rendered during custodial interrogation as follows:

> Statements made to police or to their agents by those in police custody in response to police interrogation are inadmissible at trial, unless the State sustains its burden to prove beyond a reasonable doubt, that they were preceded by a knowing and voluntary waiver of the privilege against self-incrimination and the right to counsel and were themselves voluntarily given. In determining whether a statement or waiver was voluntarily given, we look to all the circumstances surrounding its giving to determine whether it was the product of any violence, threats, promises or other improper influence. The appropriate standard for evaluating the voluntariness of a waiver of rights is the totality of the circumstances test.

*Bivins v. State* (1994), Ind., 642 N.E.2d 928, 936, *reh'g denied.*

The threshold question in the instant case is whether S.A. was subjected to custodial interrogation within the meaning of *Miranda.* After the missing book was discovered in S.A.'s book bag, vice-principal Beck questioned S.A. as to whether he had any school property in his possession. S.A. repeatedly said that he did not. Then, Beck asked S.A. to open his book bag and tell him if anything was missing, at which time S.A. admitted to having possession of the book, but said that he found it. Mr. Beck then called S.A.'s father, who arrived at the school shortly thereafter. S.A.'s father continued to question S.A. in Mr. Beck's presence, and eventually S.A. admitted to stealing the book

from the guidance office and using it to gain access to student lockers and steal jackets.

 This questioning by Mr. Beck and S.A.'s father does not amount to custodial police interrogation. The *Miranda* warnings were designed to secure the criminal defendant's constitutional right against compulsory self-incrimination. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. When an accused is subjected to custodial interrogation, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the [defendant's Fifth and Fourteenth Amendment] privilege against self-incrimination." *Id.* at 444, 86 S.Ct. at 1612. The *Miranda* warnings apply only to custodial interrogation, *Id.; Oregon v. Mathiason* (1977), 429 U.S. 492, 494, 97 S.Ct. 711, 713, 50 L.Ed.2d 714, because they are meant to overcome the inherently coercive and police dominated atmosphere of custodial interrogation. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612; *See also Carter v. State* (1994), Ind.App., 634 N.E.2d 830. Here, there was no such coercive atmosphere to protect against. The questioning took place in the school building, by the vice-principal, and a major portion of it in the presence of the student's father. As such, S.A. was not in police custody nor was he interrogated by a police officer, and therefore the *Miranda* safeguards are inapplicable.

 S.A. also argues that he was denied the opportunity of meaningful consultation with his father. The requirements for the waiver of constitutional rights of a child have been codified by our legislature in I.C. 31–6–7–3 (1988). Essentially, Indiana affords additional protection to juveniles in order to effectuate a valid waiver. *See Foster v. State* (1994), Ind.App., 633 N.E.2d·337, 347, *trans. denied.* However, because S.A. was not in police custody and not questioned by a law enforcement officer, the meaningful consultation safeguard does not apply. The trial court properly denied S.A.'s motion to suppress his statements. *See Sevion v. State* (1993), Ind.App., 620 N.E.2d 736, 738 (when a juvenile who is not in custody gives a state-

ment to police, neither the safeguards of the *Miranda* warnings nor the protections of I.C. 31–6–7–3 apply to him); *See also Scott v. State* (1987), Ind., 510 N.E.2d 170, *cert. denied Scott v. Indiana* (1987), 484 U.S. 978, 108 S.Ct. 492, 98 L.Ed.2d 490.

*CONCLUSION*

Based on the foregoing, the searches of S.A.'s locker and school book bag were proper pursuant to I.C. 20–8.1–5–17 and the "reasonable suspicion" standard in *T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720. Additionally, S.A. was not subject to custodial interrogation within the meaning of *Miranda*, and thus his statements made to vice-principal Beck were properly admitted.

Accordingly, the trial court's decision to deny S.A.'s motion to suppress is affirmed.

CHEZEM and FRIEDLANDER, JJ., concur.