DICKSON, Justice.
In this interlocutory appeal, the defendant, high school student John P. Myers, challenges the trial court's order denying his motion to suppress evidence resulting from a search of his vehicle in the school parking lot. The Court of Appeals affirmed. Myers v. State, 806 N.E.2d 350 (Ind.Ct.App.2004). We granted transfer and likewise affirm the denial of the defendant's motion to suppress.
Charged with possession of a firearm on school property, a class D felony,[1] the defendant filed a motion to suppress evi-denee seized during the search of his vehicle. Following an evidentiary hearing, the trial court denied the motion with a detailed order that included specific findings of fact, among which were the following:
1. This matter arises from a narcotic drug dog sweep conducted at the Austin High School on December 12, 2002. As a result of the sweep the Defendant's automobile was searched and a firearm was seized from the vehicle ....
[[Image here]]
3.... The Defendant clearly did not consent to the search of his vehicle.
4.... [The evidence was that the Austin High School was a closed campus, and therefore Defendant was not free to leave school at any time he desired. The facts, herein, show that ... the vehicle [was] no longer "inherently mobile" and that to require that a Police Officer obtain a search warrant would not have been unreasonable.
5. The actual search of the vehicle was made herein not by a Police Officer but by a School Official .... The evidence, while indicating that the Police participated in the sweep, the record does not contain evidence that the police coerced, dominated or directed the actions of the School. Rather it was the School who determined that the sweep would take place, where the sweep was to be conducted, and the range of time in which the sweep was to be conducted, further it was the School who did any search after the dog had alerted to a locker or vehicle....
6. Having determined that the School Officials herein did not act as agents of the Police, ... [tlhe Court, here, finds that the action of the School Officials in conducting the search of the Defendant's vehicle was not unreasonable under the circumstances ....
Appellant's App'x. 4-6. Upon the defendant's motion, the trial court certified its decision for interlocutory appeal.
Acknowledging that school officials are subject to a less demanding constitutional standard for student searches and seizures than that applied to law enforcement officials, the defendant contends that such relaxed standards should not apply here due to substantial police involvement. He urges that the challenged actions were a police search, not a school search; that the use of police narcotic drug dogs at his particular vehicle was not supported by reasonable particularized suspicion; and that the resulting warrantless search of his *1158 vehicle was not justified by his consent or by the automobile exception to the warrant requirement. Each of the defendant's contentions asserts a violation of both the state and federal constitutions.
The defendant separately identifies the Search and Seizure Clause of the Indiana Constitution, Article 1, Section 11, and its reasonableness requirement. But as to both of his claims that the dog sniff required reasonable suspicion and that the ensuing warrantless vehicle search was invalid, he does not present any claim or argument that Section 11 requires a different analysis or yields a different result than that produced under the federal Fourth Amendment. Where a party, though citing Indiana constitutional authority, presents no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from its federal counterpart, we resolve the party's claim "on the basis of federal constitutional doctrine and express no opinion as to what, if any, differences there may be" under the Indiana Constitution. Williams v. State, 690 N.E.2d 162, 167 (Ind.1997); see also White v. State, 772 N.E.2d 408, 411 (Ind.2002); Matheney v. State, 688 N.E.2d 883, 906 n. 29 (Ind.1997); Fair v. State, 627 N.E.2d 427, 480 n. 1 (Ind.1998); State v. Hurst, 688.N.E.2d 402, 403 n. 1 (Ind.1997); Games v. State, 684 N.E.2d 466, 478 n. 7 (Ind.1997); Gregory, Bey v. State, 669 N.E.2d 154, 157 n. 8 (Ind.1996); Tobias v. State, 666 N.E.2d 68, 72 n. 1 (Ind.1996); Bryant v. State, 660 N.E.2d 290, 295 n. 12 (Ind.1995); Bivins v. State, 642 N.E.2d 928, 986. n. 1 (Ind.1994); St. John v. State, 528 N.E.2d 1853, 1855 (Ind.1988). We thus address the defendant's contentions in light of federal, not state, constitutional law.
With respect to his claim that the dog sniff was unconstitutional, the defendant concedes that such dog sniffs are not "searches" requiring probable cause under the Fourth Amendment to the United States Constitution, but he contends that canine sniff activities must be supported by reasonable individualized suspicion, citing Cannon v. State, 722 N.E.2d 881, 884 (Ind.Ct.App.2000) and Kenner v. State, 703 N.E.2d 1122, 1125 (Ind.Ct.App.1999), as well as several federal cases condemning "fishing expeditions." The defendant argues that the sniff test in this case lacked individualized reasonable suspicion, and thus the evidence should be suppressed.
The United States Supreme Court has recently addressed "[wlhether the Fourth Amendment requires reasonable, articula-ble suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop." Ilinois v. Caballes, 543 U.S. 405, 125 S.Ct. 834, 887, 160 LEd.2d 842, 846 (2005). The Supreme Court observed that the dog sniff was performed on the exterior of a car and held that "[alny intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement." Caballes, 125 S.Ct. at 838, 160 L.Ed.2d at 847. Noting the absence of any contention that the traffic stop involved an unreasonable detention, the Court concluded: "A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Caballes, 125 S.Ct. at 838, 160 L.Ed.2d at 848. The effect of Caballes is to supercede the defendant's assertions regarding Camnon and Kenner on this point.[2]
*1159 In the present case, the defendant's car was subjected to the narcotics dog sniff test as it was parked and unoccupied and the defendant was in school. In light of Caballes, we reject the defendant's claim that reasonable individualized suspicion was required by the federal constitution before officials could use a trained narcotics-detection dog to sniff the outside of the defendant's unoccupied motor vehicle.
The defendant's other contention is that the warrantless search of his vehicle was not justified by the automobile exception to the general rule that a warrant is required for a search, nor by his consent. Resolution of this challenge requires consideration of whether the search of the defendant's vehicle is governed by the less demanding constitutional standard for searches and seizures conducted by school officials.
The Fourth Amendment protects students from encroachments by public school officials, who act as state officers. New Jersey v. T.L.O., 469 U.S. 325, 333-34, 105 S.Ct. 733, 738, 83 L.Ed.2d 720, 729 (1985). Thus, school children have a legitimate expectation of privacy in personal-property articles carried on campus. Id. at 388-89, 105 S.Ct. at 741, 88 L.Ed.2d at 733. ("We are not yet ready to hold that schools and the prisons need be equated for purposes of the Fourth Amendment."). But "while children assuredly do not 'shed their constitutional rights at the schoolhouse gate,' ... the nature of those rights is what is appropriate for children in school." Vernonia School District 47J v. Acton, 515 U.S. 646, 655-56, 115 S.Ct. 2386, 2392, 182 LEd.2d 564, 576 (1995) (quoting Tinker v. Des Moines Independent Community School Dist., 898 U.S. 508, 506, 89 S.Ct. 738, 21 LEd.2d 731 (1969)). Students' privacy interests must be balanced with "the substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds," a task that has become increagingly difficult with the pervasive onslaught of drugs and violent crimes in schools. T.L.O., 469 U.S. at 389, 105 S.Ct. at 741, 88 LEd.2d at 788. Accordingly, "the school setting requires some easing of the restrictions to which searches by pub-lie authorities are ordinarily subject," so that school officials "need not obtain a warrant before searching a student who is under their authority." Id. at 340, 105 S.Ct. at 742, 88 L.Ed.2d at 733-34. Such searches only depend on "the reasonableness, under all the cireumstances, of the search." Id. at 341, 105 S.Ct. at 742, 83 L.Ed.2d at 734.
The defendant argues that the war-rantless search of his vehicle resulted from the substantial involvement of police with school officials and thus amounted to a constitutionally unreasonable search and seizure. The defendant maintains that, because the police involvement in the search here was substantial, rather than minimal, the relazed constitutional standard set out in T.L.O. is inapplicable, and that the warrant requirement should be fully applicable to prohibit the challenged search.
Although in 7.L.O. the United States Supreme Court clearly relaxed the Fourth Amendment standard for school officials searching students, it expressly left open the appropriate standard for determining the legality of searches "con *1160 ducted by school officials in conjunction with or at the behest of law enforcement agencies ...." Id. at 342 n. 7, 105 S.Ct. at 743 n. 7, 88 LEd.2d at 735 n. 7. In the face of this open question, many lower courts have identified standards for three different possible scenarios of police involvement in searches of students in schools: (1) where school officials initiate the search or police involvement is minimal, the reasonableness standard is applied; (2) where the search is conducted by the school resource officer on his or her own initiative to further educationally related goals, the reasonableness standard is applied; and (3) where "outside" police officers initiate the search of a student for investigative purposes, the probable cause and warrant requirements are applied. In re Angelia D.B., 211 Wis.2d 140, 151-58, 564 N.W.2d 682, 686-87 (Wis.1997); People v. Dilworth, 169 Ill.2d 195, 206-07, 214 Ill.Dec. 456, 661 N.E.2d 310, 316-17 (Ill.1996); Russell v. State, 74 S.W.8d 887, 892-93 (Tex.App.2002); Im the Matter of Josue T., 1999-NMCA-115, 117-18, 128 NM. 56, 61-62, 989 P.2d 481, 486-37 (N.M.Ct.App.1999). We find this approach and analysis persuasive. Thus, where a search is initiated and conducted by school officials alone, or where school officials initiate a search and police involvement is minimal, the reasonableness standard is applicable. And the ordinary warrant requirement will apply where "outside" police officers initiate, or are predominantly involved in, a school search of a student or student property for police investigative purposes.
The trial court determined as a matter of historical fact that the school officials, not the police, conducted the searches and that the police only assisted the school officials. The decision to conduct the sweep was made by the school and, although the time and date of the sweep was determined by the police, it was within a range of dates determined by the school; the areas to be searched were determined by the school; and the actual search was conducted by school officials Because these facts from the record support the trial court's finding that the school initiated and conducted the search and sought only supporting police resources such as trained narcotics dogs that were not available to the school, we find that the propriety of the vehicle search under the Fourth Amendment is governed by the reasonableness test, not the warrant requirement.
To determine whether a school search is reasonable, we consider: (1) whether the action was justified at its inception, and (2) whether the search conducted was reasonably related in seope to the cireumstances that justified the interference in the first place. T.L.O., 469 U.S. at 341-42, 105 S.Ct. at 742-48, 83 L.Ed.2d at 734-85. A search by school officials is justified at its inception if "there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school," and a search is permissible in scope if "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." Id.
Although a reviewing court should deferentially review trial court findings of historical fact, giving due weight to inferences drawn from those facts, the determinations of reasonable suspicion and probable cause for warrantless searches is to be determined on a de novo standard on appeal. Ornelas v. United States, 517 U.S. 690, 694-700, 116 S.Ct. 1657, 1660-64, 134 L.Ed.2d 911, 917-21 (1996). We apply the same standard to our review of the reason *1161 ableness of this school search. We conclude, however, that the search was reasonable from its inception because it was conducted after an alert by a police nareot-ics dog. Furthermore, the search as conducted was reasonably related in scope because the school officials limited their searches to those areas upon which the dogs alerted. The vehicle search by school officials was thus reasonable.
Because reasonable suspicion is not required for a canine narcotics sniff of the exterior of an automobile that does not involve an unreasonable detention of a person, and because the search was predominantly initiated and conducted by the school officials of Austin High School and was reasonable, we affirm the trial court's denial of the defendant's motion to suppress the firearm seized from the defendant's vehicle as a result of the search.
SHEPARD, C.J., and BOEHM, J., concur.
SULLIVAN, J., dissents with separate opinion.
RUCKER, J., dissents with separate opinion.

. Indiana Code § 35-37-9-2.

. Both cases were decided under federal constitutional jurisprudence. Cannon refers only to the Fourth Amendment and makes no reference to the Indiana Constitution. In Ken- *1159 ner, the court notes the defendant's argument that the test for warrantless searches are not identical under the federal and state constitutions, but decides the case solely under the Fourth Amendment because it presents an issue of reasonable suspicion justifying an investigatory stop, not one of probable cause supporting a warrantless search. 703 N.E.2d at 1125.