v.

**STATE of Indiana, Appellee–Petitioner.**

No. 49A04–0703–JV–192.

Court of Appeals of Indiana.

Dec. 7, 2007.

---

Elizabeth A. Gabig, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

In this case of first impression, we balance the privacy rights of students and citizens against our schools' need to identify individuals on school property in this post-Columbine world. More specifically, we are asked to determine whether a school police officer may conduct a pat-down search of a student on school grounds for the sole purpose of finding the student's identification card if he fails to produce it when asked to do so. Balancing the student's rights against the interests of school safety, we conclude that a pat-down search for identification of a student on school grounds when the student fails to produce such identification does not violate the student's rights against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.

## FACTS

On September 14, 2006, Indianapolis Public Schools Police Officer Sheila Lam-

bert came into contact with D.L.[1] and two other students in the second-floor hallway of Treadwell Hall at Arsenal Technical High School during a non-passing period. Officer Lambert asked D.L. and his companions if they had an identification card, a pass, or a schedule, and they responded that they did not. At that time, Officer Lambert conducted a pat-down search of D.L. for his identification card. According to Officer Lambert, immediately after she began patting D.L. down, he put something down his pants. Officer Lambert handcuffed D.L. and brought him to the police office, where Officer Jeffrey Riley conducted a search. During this search, Officer Riley shook D.L.'s pant legs, whereupon a clear plastic bag containing a "dry, green leafy vegetation" fell to the floor. Tr. p. 72. The vegetation inside of the bag was later determined to be 1.03 grams of marijuana.

On September 18, 2006, the State filed a petition alleging D.L. to be delinquent child based upon the offense of Possession of Marijuana, a Class A misdemeanor if committed by an adult.[2] On October 12, 2006, D.L. moved to suppress all evidence obtained pursuant to the warrantless search of his person. Following a December 13, 2006 suppression hearing immediately preceding the denial hearing, the juvenile court denied D.L.'s motion. At the denial hearing, D.L. objected to the admission into evidence of State's Exhibits 1 and 2, which were the marijuana which dropped from D.L.'s pant leg and the laboratory report indicating the positive test for marijuana in the amount of 1.03 grams.

The juvenile court overruled those objections and subsequently entered a true finding of delinquency on the basis of the offense of possessing marijuana. The juvenile court further awarded wardship of D.L. to the Department of Correction and recommended a commitment of eighteen months. D.L. now appeals.

## DISCUSSION AND DECISION[3]

D.L. claims that the pat-down search of his person, leading to his alleged attempt to place something into his pants, as well as to the discovery of the marijuana which dropped from his pants, was in violation of his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. In its brief, the State responds that D.L. waived this claim by failing to lodge a timely objection and further, that the search was reasonable under the circumstances.[4]

### I. Standard of Review

■■■ In reviewing D.L.'s claims, we observe that our standard of review on the admissibility of evidence is the same whether the challenge is made by a pretrial motion to suppress or by a trial objection. *Ackerman v. State*, 774 N.E.2d 970, 974 (Ind.Ct.App.2002), *trans. denied*. A trial court has broad discretion in ruling on the admissibility of the evidence. *Gibson v. State*, 733 N.E.2d 945, 951 (Ind.Ct.App. 2000). We will reverse a trial court's ruling on the admissibility of the evidence only when it has been shown that the trial

1. D.L. did not stipulate to his date of birth, but the juvenile court determined it had jurisdiction over the case based upon D.L.'s mother's testimony that D.L. was born on February 20, 1991.

2. Ind.Code § 35–48–4–11 (2006).

3. We held oral argument in this case on November 8, 2007 at Lawrence North High School. We wish to thank counsel for their advocacy and extend our appreciation to the faculty, staff, and students of Lawrence North for their fine hospitality.

4. The State conceded at oral argument that D.L.'s challenge was not waived.

court abused its discretion. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We consider the evidence most favorable to the court's decision and any uncontradicted evidence to the contrary. *Id.* We review *de novo* the ultimate determination of reasonable suspicion. *Ransom v. State,* 741 N.E.2d 419, 421 (Ind.Ct.App.2000), *trans. denied.*

While D.L. separately identifies the Search and Seizure Clause of the Indiana Constitution, Article 1, Section 11, he does not present any claim or argument that Section 11 requires a different analysis or yields a different result than that produced under the federal Fourth Amendment. Because he cites no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from his Fourth Amendment analysis, we resolve his claim on the basis of federal constitutional doctrine only. *See Myers v. State,* 839 N.E.2d 1154, 1158 (Ind.2005).

## II. The Merits

■ The leading case governing searches conducted by public school officials is *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). In *T.L.O.,* the Supreme Court rejected the argument that school officials are acting *in loco parentis* and concluded instead that school officials are state actors fulfilling state objectives and are therefore subject to the strictures of the Fourth Amendment. *T.L.O.,* 469 U.S. at 333–36, 105 S.Ct. 733. The court observed, however, that the school setting required some easing of the restrictions to which searches by public authorities are ordinarily subject. *Id.* at 340, 105 S.Ct. 733. Accordingly, the court dispensed with the warrant requirement and modified the probable cause requirement in holding that the legality of a search of a student depended simply upon the reasonableness, under all of the circumstances, of the search. *Id.* at 341, 105 S.Ct. 733. For purposes of determining the reasonableness of the search, the court announced a two-part test: (1) the action must be justified at its inception; and (2) the search as conducted must be reasonably related in scope to the circumstances which justified the interference in the first place. *Id.* A search by a school official is justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or school rules. *Id.* at 341–42, 105 S.Ct. 733. The search will be permissible in scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction. *Id.* at 342, 105 S.Ct. 733; *see S.A. v. State,* 654 N.E.2d 791, 795 (Ind.Ct.App.1995), *trans. denied; Berry v. State,* 561 N.E.2d 832, 837 (Ind.Ct.App.1990).

■ D.L. argues that Officer Lambert's search of him was not justified at its inception. D.L. points out that at the time Officer Lambert encountered him, he was not displaying his school identification card as required, and that upon being asked, he admitted to Officer Lambert that he did not have the required identification. It is D.L.'s contention that Officer Lambert's search, for the alleged purpose of finding his identification card, was not justified at its inception because he had already admitted against his interest that he did not have the card, so there would have been no reasonable grounds for conducting a search to turn up evidence of a rule violation.

The State argues in response that Officer Lambert's search was justified at its inception because D.L.'s failure to produce an identification card meant he could not

be conclusively identified. According to the State, Officer Lambert was encountering a situation that could not be resolved without identifying the parties involved. The only means by which Officer Lambert could address and resolve the situation was to determine whether the individuals carried identification, which given D.L.'s denial that he had identification, required a minimally intrusive search ultimately leading to the discovery of the marijuana.

Prior cases involving searches by school officials are instructive in assessing the merits of D.L.'s and the State's arguments. In *T.L.O.*, a teacher discovered T.L.O. and another student smoking in the lavatory, a violation of school rules. T.L.O. and her companion were taken to the principal's office, where they were questioned. T.L.O.'s companion admitted violating the school rule. T.L.O. denied she had been smoking and claimed she did not smoke at all. In response to T.L.O.'s denials, the vice-principal demanded to see T.L.O.'s purse, opened it, and discovered a pack of cigarettes. Upon removing the cigarettes, the vice-principal discovered cigarette rolling papers often associated with the use of marijuana. Suspecting he might find further evidence of drug use, the vice-principal searched the purse more thoroughly and in doing so, uncovered marijuana and other evidence implicating T.L.O. in drug dealing.

The Supreme Court held that the search of T.L.O.'s purse was reasonable under the circumstances. It was justified at its inception because T.L.O. had denied the smoking accusations, she was carrying a purse, an obvious place to put cigarettes, and the discovery of cigarettes would be strong evidence that she was indeed violating the anti-smoking laws of the school. *T.L.O.*, 469 U.S. at 344–46, 105 S.Ct. 733. The court additionally determined that the scope of the search was permissible be-cause the vice-principal's discovery of the rolling papers inside the purse reasonably gave rise to a suspicion that T.L.O. was carrying marijuana, which justified the extended search of her purse resulting in the discovery of marijuana and other evidence implicating T.L.O. in drug dealing. *Id.* at 346–47, 105 S.Ct. 733.

In the recent case of *Myers*, the Indiana Supreme Court applied the *T.L.O.* test in upholding the search of a student's vehicle and the subsequent discovery of a firearm inside. 839 N.E.2d at 1160–61. In *Myers*, school officials enlisted the assistance of police officers in conducting a sweep for contraband. During this sweep, a police dog alerted to the student's vehicle, causing school officials to search his car and discover a firearm. Upon determining that the search was initiated and largely conducted by school officials, the *Myers* court applied the *T.L.O.* test and concluded that, given the lack of reasonable suspicion necessary to conduct a dog sniff of an automobile exterior, together with the dog's alert, the search was justified from its inception. Upon determining that the search did not extend beyond the scope of the area to which the dog alerted, the Supreme Court concluded the search was reasonable.

Prior to the Indiana Supreme Court's holding in *Myers*, this court applied the *T.L.O.* test several times, one of which was in *Berry*, where a panel of this court upheld the search of a student's jacket by a school principal. *Berry*, 561 N.E.2d at 837. In *Berry*, a teacher found a student accusing the respondent of selling marijuana. This student then told the teacher that the respondent possessed marijuana. The teacher took the student and the respondent to the principal's office and reported the marijuana allegations to the principal, which the student confirmed. Following the respondent's denial that he

possessed marijuana, the principal searched his jacket and discovered marijuana. In considering the reasonableness of the search under the circumstances, the *Berry* court held the search was reasonable on the basis that the teacher had reported a possible rule violation, a student had confirmed this violation, and the respondent had denied the violation. The *Berry* court additionally held that the scope of the search was reasonable because the respondent's jacket, which the search was limited to, was the likely place for the marijuana to be if the respondent had possessed it.

In *S.A. v. State*, 654 N.E.2d 791, 795–96 (Ind.Ct.App.1995), *trans. denied*, this court again applied the *T.L.O.* test in affirming the use of evidence procured pursuant to a search of a student by a school official. In *S.A.*, following a rash of locker break-ins at a high school and the discovery by school officials that a book containing the master list of locker combinations was missing, a student informant indicated that S.A. had the book in his book bag. A school officer accompanied S.A. to his locker to get his book bag, observed S.A. place the missing book in his bag, and then accompanied him to the principal's office. While at the principal's office, but out of S.A.'s presence, the officer revealed he had seen S.A. place the book in his bag. This officer then reached inside S.A.'s bag and pulled out the book.

In evaluating the reasonableness of the search under the circumstances, the *S.A.* court determined that, given the multiple locker break-ins and the school officer's specific information that the missing book was in S.A.'s bag, the search was justified at its inception. *Id.* The *S.A.* court further determined the scope of the search was permissible because it was confined to the book bag and the school officials had am-

ple information to believe they would find the book there. *Id.*

Again in *D.B. v. State*, 728 N.E.2d 179, 181–82 (Ind.Ct.App.2000), *trans. denied*, and *C.S. v. State*, 735 N.E.2d 273, 275–76 (Ind.Ct.App.2000), *trans. denied*, this court determined that searches by school officials were reasonable under the circumstances. In *D.B.*, a school police officer smelled cigarette smoke coming from the stalls in the girls' bathroom and noticed that D.B. and another student were in the same stall. When the girls came out of the stall and were asked what they were doing, they gave no response, justifying a pat-down search which revealed the presence of marijuana. *D.B.*, 728 N.E.2d at 181–82. In *C.S.*, another student made a non-specific report regarding the respondent. After removing him from the classroom, the school officer performed a pat-down search citing officer safety concerns as her justification. Given the officer's stated concern and the limited scope of the search, this court determined the search was reasonable. *C.S.*, 735 N.E.2d at 276.

In *D.I.R. v. State*, 683 N.E.2d 251 (Ind. Ct.App.1997), however, this court determined that the circumstances demonstrated a search of a student by a school official was not reasonable under the *T.L.O.* test. In that case, D.I.R. was subjected to a search of her pants pockets because she was late for classes. Apparently, all students at D.I.R.'s school were subjected to a search by an electronic wand detector, but by the time D.I.R. arrived at the school, the wand had been locked away. This court concluded that such an "improvisational search," justified only on the basis that D.I.R. was late for class, was not reasonable under the circumstances. *D.I.R.*, 683 N.E.2d at 253.

Upon considering the above cases in light of the instant case, we note that this court, in generally finding school searches

to be reasonable under the circumstances, has largely endorsed the justifications offered by the investigating school officials in conducting the searches. In *C.S.*, this court found the school search was justified at its inception based upon the mere statement by the school officer, without any further justification, that she feared for her safety. 735 N.E.2d at 275–76. Here, while Officer Lambert did not indicate any fear for her safety, or specifically articulate why she sought D.L.'s identification card, the obvious inference from these repeated attempts by a public school safety officer to identify D.L. was that she found it necessary to determine his identity. Significantly, the very rule Officer Lambert was seeking to enforce, specifically that D.L. present his identification upon request, has as its purpose the protection of Arsenal Tech High School students.

We believe that in this post–9/11, post-Columbine age of increasing school violence, a public school police officer's determination that she must identify the individuals with whom she is in contact similarly warrants our endorsement. *See, e.g., Cochran v. State*, 843 N.E.2d 980, 983–84 (Ind.Ct.App.2006) (recognizing that it is an essential police function for an officer to ask individuals for identification and that doing so does not by itself raise a Fourth Amendment issue), *trans. denied, cert. denied*, —— U.S. ——, 127 S.Ct. 943, 166 L.Ed.2d 722 (2007). Indeed, the presence of an unidentified individual on school grounds has greater potential safety implications than does the mere scent of cigarette smoke as in *D.B.* or the fact of hearsay allegations regarding a student's sale of marijuana as in *Berry*. D.L. was on school grounds during a non-passing period and was unable to present identification when asked. In our estimation, it was not unreasonable for Officer Lambert to respond to this situation by conducting a relatively limited pat-down search of D.L.'s pocket in search of his identification. We are unpersuaded that D.L.'s admission to being in violation of school rules somehow obviates the officer's need to confirm this violation, or her accompanying need to identify him via any identification card potentially on his person. Given the circumstances of the unidentified individuals in a school setting, Officer Lambert's clear need to determine their identities, and this court's generally finding school searches to be reasonable under the circumstances, the limited pat-down search for identification in this case was justified at its inception.

■ D.L. does not argue under the second prong in *T.L.O.* that the scope of the search, once justified, was not reasonably related to the objectives of the search or that it was excessively intrusive. The stated objective was to look for D.L.'s identification. Upon beginning to pat him down, Officer Lambert observed D.L. appear to place something down his pants. She then led him to the school police office where a male colleague conducted a pat-down search, including shaking D.L.'s pant legs. The substance later identified to be marijuana fell out of the pant legs as a result. Under the *T.L.O.* analysis requiring that the scope of a search be reasonably related to the search's objectives and not excessively intrusive, it was not unreasonable, in searching D.L. for his identification, to pat down his pant leg, and, following his attempt to place something down his pants, for a male police officer to shake his pant legs and to collect the green, leafy vegetation which fell out as a result.

## III. Conclusion

Having found that the search in this case was reasonable at its inception and reasonably related in scope to the circum-

stances justifying it, we hereby decline D.L.'s claim that the juvenile court abused its discretion in admitting the evidence at his denial hearing.

The judgment of the juvenile court is affirmed.

NAJAM, J., concurs.

BAKER, C.J., concurs with opinion.

BAKER, Chief Judge, concurring.

I agree with the majority's determination that Officer Lambert's search of D.L. was justified. Indeed, the majority presents a thoughtful analysis of *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), and the Indiana cases that have applied the principles set forth therein. However, I write separately to further comment on the application of the *T.L.O.* test announced in *Myers v. State*, 839 N.E.2d 1154, 1160 (Ind.2005), which involves student searches that are conducted by school resource officers. As the majority notes, the test provides that "a search by a school official is justified at its inception when there are reasonable grounds for suspecting the search will turn up evidence that the student has violated or is violating either the law or school rules." Op. at 503 (citing *T.L.O.*, 469 U.S. at 341–42, 105 S.Ct. 733).

In this case, D.L. was walking the school halls during a non-passing period without identification, and Officer Lambert did not know that D.L. was a student. The record further supports the reasonable inference that Officer Lambert could not identify D.L. or the others as students by sight alone.

In my view, Officer Lambert's duty to identify D.L. was crucial in these circumstances because if D.L. was a student, he was violating school policy by not displaying the required identification lanyard. Similarly, if D.L. and the others were not

students, Officer Lambert would need to identify them and determine whether they were trespassing, loitering, or properly on school grounds. Hence, I believe that Officer Lambert's actions were reasonable because the circumstances supported her need to determine D.L.'s identity—"particularly in this post–9/11, post-Columbine age of increasing school violence." *Id.* at 506. In essence, it should not matter that Officer Lambert's articulated reason for the search was only to confirm or reject D.L.'s assertion that he was not carrying identification. *See T.L.O.*, 469 U.S. at 339, 105 S.Ct. 733 (observing that the school campus requires some relaxation of the restrictions to which searches by authorities are normally subject). In other words, even though Officer Lambert's articulated reason for the search may not have been adequate, the search was nonetheless justified when examining "all of the circumstances." *Id.* at 503 (citing *T.L.O.*, 469 U.S. at 339, 105 S.Ct. 733). As a result, I agree that the marijuana seized from D.L. was properly admitted into evidence.