# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 04 2019, 8:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James E. Harper
HARPER & HARPER
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony A. Mashburn,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 4, 2019

Court of Appeals Case No.
18A-CR-472

Appeal from the La Porte Superior Court

The Honorable Michael S. Bergerson, Judge

Trial Court Cause No.
46D01-1506-FA-11

**Bailey, Judge.**

# Case Summary

[1] Following a jury trial, Anthony A. Mashburn ("Mashburn") was convicted of four counts of Child Molesting: two Class A felonies[1] and two Class C felonies.[2] Mashburn now appeals.

[2] We affirm.

# Issues

[3] Mashburn presents the following restated issues:

    I.     Whether insufficient evidence supports the convictions because the victim's testimony was incredibly dubious.

    II.    Whether remarks during closing arguments amounted to prosecutorial misconduct, constituting impermissible commentary on Mashburn's decision not to testify at trial.

    III.   Whether the court committed reversible error in giving a jury instruction concerning evidence of penetration.

# Facts and Procedural History

[4] In 2015, the State charged Mashburn with five counts of Child Molesting— three Class A felonies and two Class C felonies—alleging Mashburn molested

---

[1] Ind. Code § 35-42-4-3(a)(1).

[2] I.C. § 35-42-4-3(b).

his former step-daughter, K.J., between February 1, 2005, and January 1, 2011, when K.J. was under fourteen years old and Mashburn was at least twenty-one years old. With respect to the Class A felony counts, the State alleged Mashburn "did perform sexual intercourse" (Count I); "did perform deviate sexual conduct" (Count II); and "did submit to deviate sexual conduct" (Count III). App. Vol. II at 34. As to the Class C felony counts, the State alleged Mashburn, "with intent to arouse or to satisfy the sexual desires" of either Mashburn or K.J., "did perform fondling and touching" (Count IV) and "did submit to fondling and touching" (Count V). *Id.* at 35.

[5] A jury trial commenced in November 2017. At trial, K.J. testified Mashburn began molesting her when she was six years old, at which point Mashburn was her step-father. Mashburn regularly molested K.J. while her mother was at work. The molestation spanned about five years until Mashburn moved out in early 2011; Mashburn and K.J.'s mother later divorced. K.J. described acts Mashburn perpetrated over the years, including sucking her breasts, making her rub his penis, and making her perform and submit to oral sex. Among the evidence was testimony from K.J.'s mother, who found blood in K.J.'s underwear before K.J. began menstruating. The evidence also included two recorded calls. In the first, K.J. spoke with Mashburn, telling him she disclosed the molestation to others. This call contained periods of silence. The second call was between Mashburn and K.J.'s mother, shortly after the first call.

[6] At trial, the State proposed the following jury instruction, which the trial court gave over Mashburn's objection: "To sustain a conviction for child molesting,

proof of the 'slightest penetration' of the female sex organ is sufficient." App. Vol. III at 175. Ultimately, the jury did not reach a verdict on Count I—the count pertaining to sexual intercourse—but found Mashburn guilty of the remaining counts. A sentencing hearing ensued, with Mashburn receiving an aggregate sentence of seventy years in the Indiana Department of Correction.

[7] Mashburn now appeals.

# Discussion and Decision

## Sufficiency of the Evidence

[8] When reviewing a challenge to the sufficiency of the evidence, "we consider only the evidence and reasonable inferences most favorable to the convictions, neither reweighing evidence nor reassessing witness credibility." *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). We will affirm "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017). Moreover, "[t]he uncorroborated testimony of the victim in a child molesting case is sufficient to sustain the guilty verdict." *Becraft v. State*, 491 N.E.2d 535, 536 (Ind. 1986).

[9] Mashburn challenges the sufficiency of the evidence, but does not dispute that the State presented evidence supporting each element of the offenses. Instead, Mashburn notes that "the only testimony about the molestation was from K.J." Br. of Appellant at 15. Mashburn focuses on challenging the credibility of K.J., characterizing her testimony as "highly dubious." *Id*. He directs us to the

"incredible dubiosity" rule and "requests that this Court reweigh the credibility of K.J. in light of the lack of corroboration of her testimony." *Id.* at 16.

[10] Under the "incredible dubiosity" rule, "a court will impinge upon the jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Murray v. State*, 761 N.E.2d 406, 408 (Ind. 2002). This rule applies "only in exceptionally rare circumstances"—that is, "[t]he evidence supporting the conviction must have been offered by a sole witness; the witness's testimony must have been coerced, equivocal, and wholly uncorroborated; it must have been 'inherently improbable' or of dubious credibility; and there must have been no circumstantial evidence of the defendant's guilt." *McCallister v. State*, 91 N.E.3d 554, 559 (Ind. 2018) (quoting *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015)).

[11] Here, K.J. gave unequivocal trial testimony concerning acts of molestation supporting the four convictions. There was also circumstantial evidence of Mashburn's guilt, including testimony from K.J.'s mother, who had found blood in K.J.'s underwear before K.J. began menstruating. Thus, this case does not present the sort of rare circumstances supporting application of the "incredible dubiosity" rule. We therefore decline to reweigh the credibility of K.J., and conclude that there is sufficient evidence supporting the convictions.

# Prosecutorial Misconduct

[12] Because Mashburn alleges prosecutorial misconduct for the first time on appeal, he has waived this claim of trial error. *See Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014). Under such circumstances, we review only for fundamental error, which is "an extremely narrow exception to the waiver rule." *Id.* at 668. "For prosecutorial misconduct to constitute fundamental error, it must 'make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process [and] present an undeniable and substantial potential for harm.'" *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002) (alteration in original) (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)).

[13] The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." In light of this privilege, a prosecutor commits misconduct by "mak[ing] a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Boatright v. State*, 759 N.E.2d 1038, 1043 (Ind. 2001) (quoting *Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996)). "If in its totality . . . the prosecutor's comment is addressed to other evidence rather than the defendant's failure to testify, it is not grounds for reversal." *Id.* In other words, the State may "comment on the lack of defense evidence . . . so long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the accused's failure to testify." *Dumas v. State*, 803 N.E.2d 1113, 1118 (Ind. 2004).

[14]     Mashburn directs us to a portion of the State's rebuttal closing arguments:

> In reality, Ladies and Gentlemen, unless you were there to see it yourself, there's always going to be something nobody knows what happened, except [K.J.] and the defendant. And you heard from [K.J.].
>
> The defense has made quite a few suggestions as to why the defendant did not commit the offenses. [A] [c]ouple [of] times throughout this case, in fact [at] the very beginning, [the defense] use[d] the word, crazy, in terms of [K.J.]. It's pretty offensive.
>
> Called it crazy antics. That when this phone call took place, how do we know that it wasn't just [Mashburn] thinkin', it's her crazy antics? How do we know? Not so much what [Mashburn] said on those phone calls, it's what [Mashburn] didn't say on those phone calls. You don't hear actual static to suggest that there was any problem with connectivity when she explains the purpose for the phone call. . . .
>
> She explained, I told [my sister] what's goin' on. If people start askin', what do you want me to tell [them]?
>
> The oh, crap, going through his mind is almost touchable. That dead silence I promise you was like a punch to his gut. Oh, crap. It's been four years since [the] divorce [from K.J.'s mother]. I'm sure he thought he was in the clear. . . .
>
> What does he do? Tell [them] it's a lie. Oh you bet he heard what she said. And if he thinks it's just one of [K.J.'s] crazy antics, why did he immediately call [K.J.'s mother]? I will tell you why he called [K.J.'s mother]. And you can hear it for yourself. Again, it's not what he said. It's what he didn't say.

So where's the funeral? What's goin' on? His reaction to [K.J.'s], hey, I told [my sister] about the sex stuff that we used to do - - if people start askin', what do you want me to say? Oh, crap. Silence. Tell [them] it's a lie. More silence. I guarantee you those wheels are spinning in his head . . . what's [going to] happen? Who knows? Where's you[r] mom, he asks. She's at the doctor's office.

So, [Mashburn], since you want me to lie for you, can I get an apology for what you did to me all those years?

Dead silence. Uh, I can't hear [you] . . . gotta go.

Immediately he calls [K.J.'s mother]. . . . [H]e didn't say, is [K.J.] okay? She's having one of her crazy spells. Something's going on with [K.J.]. . . . What would a reasonable reaction be [for] somebody . . . falsely accused of molesting. [Because] she didn't go into detail, like what are you talkin' about? . . . He feels [K.J.'s mother] out. He doesn't say, I'm [going to] call the police. . . . [W]hat's going on with [K.J.]? Is she off her med[ication]? Is she off her rocker? What the heck's goin' on?

No. Hey, where's the funeral? You guys goin'? What time is it?

Then they go to the funeral. He says nothing more. [K.J.'s] even at the funeral. It's what he doesn't say that screams volumes to you. It should.

Tr. Vol. III at 207-209.

[15] According to Mashburn, these arguments amount to improper commentary on his exercise of the Fifth Amendment right not to explain the call or contradict

evidence by testifying.[3] Mashburn points out that, shortly before closing arguments, the State argued it could "comment that the defendant didn't take the stand." Tr. Vol. III at 170. That is, the State argued Mashburn "open[ed] the door to the idea that [the State] didn't produce a statement that [Mashburn] may or may not have given," and that the State could comment on his lack of trial testimony. *Id.* The trial court said, "I wouldn't do that." *Id.*

[16] Mashburn asserts "[t]he prosecutor's comments to the court just prior to final arguments provide insight into the motivation of the . . . [closing] argument." Br. of Appellant at 26. Yet, "[i]t is the effect of a remark, not the intent of its speaker, that frustrates a defendant's exercise of the right to remain silent at trial." *Moore*, 669 N.E.2d at 738. Mashburn also directs us to a 1981 case in which the Indiana Supreme Court held that "where no one but the accused could have contradicted the prosecution's witnesses," a comment on the uncontradicted nature of the case amounts to an improper comment on the failure to testify. *Williams v. State*, 426 N.E.2d 662, 666 (Ind. 1981). Relying on the "no comment" approach applied in that case, Mashburn argues that only he could have contradicted K.J.'s statements, and so the closing arguments were

---

[3] Article 1, Section 14 of the Indiana Constitution "also protects a defendant's right to remain silent at trial" but that protection "is not necessarily coextensive with the federal Fifth Amendment." *Moore*, 669 N.E.2d at 739 n.14. In his Summary of the Argument, Mashburn mentions this state constitutional authority, but does not develop a cogent argument. *See* Ind. App. R. 46(A)(8)(a). We therefore resolve the claim only under the federal constitution. *See Moore*, 669 N.E.2d at 739 n.14.; *Myers v. State*, 839 N.E.2d 1154, 1158 (Ind. 2005).

improper. Br. of Appellant at 27. Yet, the Indiana Supreme Court revisited that approach when deciding *Moore* in 1996. *See Moore*, 669 N.E.2d at 739.

> In light of *Moore*, it is no longer correct to say that all prosecutor comments on the uncontradicted nature of the State's case are improper if the accused is the only person who can rebut that case. Instead, before determining whether a prosecutor's comment is improper, it must first be determined whether a reasonable jury could have interpreted the comment as a suggestion to infer the defendant's guilt from his failure to testify.

*Davis v. State*, 685 N.E.2d 1095, 1098 (Ind. Ct. App. 1997).

[17] In the challenged rebuttal arguments, the State briefly mentioned that only K.J. and Mashburn knew what happened, and the jury had heard from K.J. The State immediately began discussing K.J.'s credibility, refuting Mashburn's credibility challenges by commenting on what Mashburn said—and did not say—during the recorded calls. A reasonable jury would not interpret these arguments as suggestions to infer guilt from Mashburn's failure to testify. Rather, a reasonable jury would interpret the arguments as suggestions to reject the impeachment of K.J. and to infer guilt from other evidence. Thus, these arguments were "within the permissible range of fair commentary on the evidence or lack thereof . . . not a comment on [the] right not to testify." *Dumas*, 803 N.E.2d at 1118.

[18] We conclude that Mashburn has not identified prosecutorial misconduct. *See Boatright*, 759 N.E.2d at 1044 (determining there was no misconduct where the "comment was in response to [a] closing argument suggesting that the jury

should not believe the victim" and the "comment did not focus on, or even mention, [the] decision not to testify"). Nevertheless, the only remarks approaching misconduct were those about Mashburn and K.J. knowing what happened, and the jury hearing from K.J. This Court has determined that similar remarks did not amount to fundamental error where—as here— "the prosecutor's comment was an isolated statement" and there was vigorous cross-examination of the victim and other witnesses. *Owens v. State*, 937 N.E.2d 880, 894 (Ind. Ct. App. 2010) (identifying misconduct, but not fundamental error, where the prosecutor remarked that, other than the defendant, the victim was "the only one who knows what happened to her that night"), *trans. denied*. Thus, even assuming misconduct, there was no fundamental error. *See id.*

## Jury Instruction

[19] "We generally review a trial court's jury instruction for an abuse of discretion." *Batchelor v. State*, No. 18S-CR-436, slip op. at 4 (Ind. Mar. 18, 2019). "The trial court abuses its discretion 'when the instruction is erroneous and the instructions taken as a whole misstate the law or otherwise mislead the jury.'" *Keller v. State*, 47 N.E.3d 1205, 1208 (Ind. 2016) (quoting *Isom v. State*, 31 N.E.3d 469, 484-85 (Ind. 2015)). Moreover, Article 1, Section 19 of our state constitution provides: "In all criminal cases . . . the jury shall have the right to determine the law and the facts." In light of this provision "protect[ing] the province of the jury," our supreme court recently disapproved of instructions "inappropriately emphasizing certain facts," determining that any such jury instruction "is erroneous and misleads the jury." *Keller*, 47 N.E.3d at 1208.

[20]     The State gave the following jury instruction, over Mashburn's objection: "To sustain a conviction for child molesting, proof of the 'slightest penetration' of the female sex organ is sufficient." App. Vol. III at 162. In support, the State cited a case involving the sufficiency of evidence supporting a conviction. *Id.* Mashburn argues the instruction "unfairly emphasized particular facts, invaded the province of the jury and misled the jury." Br. of Appellant at 21. Mashburn correctly observes that the Indiana Supreme Court has disapproved of drawing instructions from sufficiency cases: "Appellate review of the sufficiency of the evidence . . . will 'rarely, if ever,' be an appropriate basis for a jury instruction because the determination is fundamentally different." *Keller*, 47 N.E.3d at 1209 (quoting *Garfield v. State*, 74 Ind. 60, 64 (1881)). Further, it is generally inappropriate for jury instructions to expound upon statutory language. *See Batchelor*, No. 18S-CR-436, slip op. at 13-14 (noting an instruction "threatened to invade the jury's province to decide the law and the facts" where the instruction provided a non-statutory definition for a particular statutory term).[4]

[21]     Assuming *arguendo* the court abused its discretion by giving the instruction, we will not reverse upon harmless error. *See* App. R. 66(A); *Batchelor*, No. 18S-CR-436, slip op. at 17. We presume that error in instruction affected the verdict,

---

[4] The State does not directly address Mashburn's argument that the instruction invaded the province of the jury, instead directing us to a single case, *Archer v. State*, where the defendant challenged a similar instruction, but for the first time on appeal. 996 N.E.2d 341, 350-51 (Ind. Ct. App. 2013), *trans. denied*, *abrogated on other grounds*. In the context of fundamental-error review, this Court determined the instruction accurately stated the law and "was not error." *Id.* at 351. Here, however, Mashburn objected to the instruction. Moreover, since *Archer*, the Indiana Supreme Court has recently expressed concern about instructions that threaten to invade the province of the jury. *See Batchelor*, 18S-CR-436, slip op. at 13-14; *Keller*, 47 N.E.3d at 1208.

*Kane v. State*, 976 N.E.2d 1228, 1232 (Ind. 2012), but affirm if a "conviction was 'clearly sustained by the evidence and the jury could not properly have found otherwise,'" *Batchelor*, 18S-CR-436, slip op. at 17 (quoting *Dill v. State*, 741 N.E.2d 1230, 1233 (Ind. 2001)). "An instruction error will result in reversal when the reviewing court cannot say with complete confidence that a reasonable jury would have rendered a guilty verdict had the instruction not been given." *Dill*, 741 N.E.2d at 1233 (internal quotation marks omitted).

[22] Mashburn argues the jury could have read the instruction "as allowing [it] to convict Mashburn of child molesting based on a single fact of 'slightest penetration' without regard to any other proof," and that "[w]ithout this instruction emphasizing this one fact, the jury may have found Mashburn not guilty of all the charges." Br. of Appellant at 22-23. Yet, the trial court gave detailed instructions concerning the elements of the charged offenses. *See* App. Vol. III at 168-74. Moreover, we note that the State requested the challenged instruction late in trial. During its case in chief, the State had elicited testimony from K.J. that—on just one occasion—Mashburn had "tr[ied] to stick his penis inside" her. Tr. Vol. II at 121. When the State asked K.J. whether Mashburn actually put his penis inside her, she first gave an equivocal answer—"[m]aybe like a little"—and eventually answered affirmatively when asked if she felt his penis "go in . . . a little bit." *Id.* The State later requested the jury instruction concerning proof of the slightest penetration. The State focused on this instruction only when arguing the jury should convict Mashburn of Count I— the count alleging sexual intercourse. The jury deadlocked on this count.

[23] Ultimately, to find Mashburn guilty of any count, the jury had to believe K.J. There was ample evidence supporting the convictions, and—unlike the count of sexual intercourse on which the jury deadlocked—the nature of evidence supporting the other counts did not turn on the quantum of penetration. We conclude the convictions were clearly sustained by the evidence and the jury could not properly have found otherwise. Thus, any error was harmless.

# Conclusion

[24] The "incredible dubiosity" rule does not apply and sufficient evidence supports the convictions. As to closing arguments, there was no misconduct—and even if the prosecutor had crossed the line, there was no fundamental error. Finally, if the trial court erred in instructing the jury, any error was harmless.

[25] Affirmed.

Riley, J., and Pyle, J., concur.