v.

**STATE of Indiana, Appellee–Petitioner.**

No. 49A02–0806–JV–480.

Court of Appeals of Indiana.

March 5, 2009.

Taffanee K. Keys, Fishers, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joseph Delamater, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-respondent D.M. appeals his adjudication as a juvenile delinquent for having committed acts that would have been two counts of Theft,[1] a class D felony, had they been committed by an adult. Specifically, D.M. argues that the finding of delinquency must be set aside because the trial court erred in admitting stolen credit cards and car keys that a school teacher seized from his jacket into evidence. We conclude that the search of D.M.'s jacket was not justified at its inception because there were not reasonable grounds for suspecting that the search would produce evidence that D.M. violated either the law or a school rule. Accordingly, we reverse and remand with instructions for the trial court to vacate D.M.'s delinquency adjudication.

## FACTS[2]

Isaac Cetto was a math teacher at an alternative school in the Warren Township School District in Indianapolis. D.M., a student in Cetto's class, entered the classroom nearly one hour late on February 28, 2008. D.M. told Cetto that he had missed the bus and had to walk to school. At some point, Cetto overheard D.M. tell another student that he had been shopping that morning and that he "had a stack." Tr. p. 6.

Although Cetto had no idea what D.M. meant by a "stack," drugs and weapons had been discovered on some of the students at the school earlier in the week. *Id.* at 7. Following D.M.'s comments to the classmate, Cetto told D.M. to hang up his jacket. During a "free period" when the students were out of the classroom, Cetto searched several jackets, including D.M.'s. *Id.* at 10. While searching D.M.'s coat pockets, Cetto found seventeen credit cards in Judith Kegley's name. It was subsequently discovered that Kegley's purse, which contained nearly twenty credit cards, had been stolen from a local grocery store approximately one hour before D.M. arrived at school that morning. Cetto also found a set of keys to a Ford Contour in D.M.'s jacket pocket. The owner, Vivian Burton, reported that the vehicle had been stolen from her driveway the previous day.

On April 1, 2008, the State filed a delinquency petition against D.M., alleging two counts of what would have been theft had those offenses been committed by an adult. At the denial hearing on May 14, 2008, D.M.'s counsel orally moved to suppress testimony and all other evidence that related to the search of the jacket. In particular, D.M. argued that the search violated his right to be free from unreasonable

1. Ind.Code § 35–43–4–2.

2. This court heard oral argument at Indianapolis on February 12, 2009, in the Indiana Supreme Court chambers. We were joined by a number of students from the Indiana Mid–America Association of Education Opportunity Program Personnel (IMAEOPP) at Vincennes University. We commend counsel for their able presentations in the presence of so many who were witnessing our appellate process for the first time.

search and seizure because there was no "individualized suspicion" that justified the search. *Id.* at 9. The trial court denied D.M.'s motion to suppress, and adjudicated D.M. a delinquent child. D.M. now appeals.

## DISCUSSION AND DECISION

D.M. argues that the adjudication of delinquency must be set aside because Cetto improperly searched the jacket. More specifically, D.M. claims that the search was not "justified at its inception as there were not reasonable grounds for suspecting that the search would turn up evidence that D.M. has violated either the law or a school rule." Appellant's Br. p. 4.

### I.  Standard of Review

■ We initially observe that our standard of review governing the admissibility of evidence is the same whether the challenge is made by a pre-trial motion to suppress or by a trial objection. *D.L. v. State,* 877 N.E.2d 500, 502 (Ind.Ct.App. 2007). A trial court has broad discretion in ruling on the admissibility of the evidence. *Gibson v. State,* 733 N.E.2d 945, 951 (Ind.Ct.App.2000). We will reverse a trial court's ruling on the admissibility of the evidence only for an abuse of discretion. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We consider the evidence most favorable to the trial court's decision and any uncontradicted evidence to the contrary. *Id.* We review de novo the ultimate determination of reasonable suspicion. *Ransom v. State,* 741 N.E.2d 419, 421 (Ind.Ct.App.2000).

### II.  D.M.'s Claim

■ In addressing D.M.'s argument that the search of his jacket was improper, we note that the leading case governing searches conducted by public school offi-

cials is *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). In *T.L.O.,* the United States Supreme Court determined that school officials are state actors fulfilling state objectives and are therefore subject to the strictures of the Fourth Amendment. *Id.* at 333–36, 105 S.Ct. 733. The *T.L.O.* court observed, however, that a school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject. *Id.* at 340, 105 S.Ct. 733. Accordingly, the *T.L.O.* court dispensed with the warrant requirement and modified the probable cause requirement, holding that the legality of a search of a student depends on the reasonableness, under all of the circumstances, of the search. *Id.* at 341, 105 S.Ct. 733.

■ For purposes of determining the reasonableness of the search, the *T.L.O.* court announced a two-part test: (1) the action must be justified at its inception; and (2) the search as conducted must be reasonably related in scope to the circumstances that justified the interference in the first place. *Id.* A search by a school official is justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or school rules. *Id.* at 341–42, 105 S.Ct. 733; *D.I.R. v. State,* 683 N.E.2d 251, 253 (Ind.Ct.App.1997). The search will be permissible in scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction. *Id.* at 342; *see also S.A. v. State,* 654 N.E.2d 791, 795 (Ind.Ct.App. 1995) (holding that a search of a student's book bag was reasonable when the evidence established that multiple locker break-ins had occurred and school officials had specific information that a missing

book containing the master list of locker combinations was in the student's bag).

Finally, our Supreme Court recognized in *Myers v. State* that a student's privacy interests at school "must be balanced with 'the substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds, a task that has become increasingly difficult with the pervasive onslaught of drugs and violent crimes in schools.'" 839 N.E.2d 1154, 1159 (Ind.2005) (quoting *T.L.O.*, 469 U.S. at 339, 105 S.Ct. 733).

In this case, it was established at the denial hearing that although D.M. told Cetto that he was late for class because he had missed the bus, Cetto overheard D.M. telling another student that he had been shopping earlier that morning and was carrying a "stack." Tr. p. 6. Cetto had no idea what a "stack" was and specifically acknowledged that he had no "individualized idea of any jacket that might contain any contraband" when he decided to conduct the search. Tr. p. 7–8. Cetto testified that he randomly searched the jackets because the school administrators told him to "keep eyes and ears out ... 'cause that's how we ended up catching other students because they were talking in class." *Id.* at 7.

When considering these circumstances, it is apparent that Cetto could not articulate a reasonable ground for suspecting that D.M. possessed contraband. Although the State maintains that the search was warranted in light of D.M.'s inconsistent explanations for his late arrival to class, D.M.'s comments to the other student, and the fact that other students had recently been found in possession of weapons and drugs at the school, we cannot agree that these circumstances provided ample justification for the search at its inception. *See D.I.R.*, 683 N.E.2d at 253 (holding that the improvisational nature of a search is precisely what renders it constitutionally infirm and a school official's search of a student must meet the reasonableness standard).

Because of the proliferation of weapons and drugs in the schools, we emphasize that our nation's courts have increasingly been called upon to consider the circumstances under which school officials may constitutionally search the students in their charge. We are mindful of the tremendous toll that school violence takes in our communities on a daily basis, including the tragic Columbine High School shootings in 1999 and the more recent Virginia Tech incident. Indeed, the Columbine tragedy was only one of nearly thirty-five other shootings perpetrated by students at elementary, middle, and high schools in America over the past ten years. *See* Infoplease.com, A Time Line of Recent Worldwide School Shootings, http://www.infoplease.com/ipa/A0777958.html (last visited February 13, 2009).

Although this court is reluctant to interfere with a school's disciplinary policies, the standard enunciated in *T.L.O.* commands that students' legitimate privacy rights must, nonetheless, be balanced against the need of school officials to deal effectively with the threat of drugs and violence. Because Cetto's search did not comport with the *T.L.O.* requirements, we are compelled to conclude that the search of D.M.'s jacket was unreasonable and the evidence seized from the jacket was improperly admitted into evidence. Accordingly, we reverse and remand with instructions for the trial court to vacate D.M.'s delinquency adjudication.[3]

---

**3.** Although D.M. asserts that the search violated his constitutional rights under both the

Fourth Amendment to the United States Constitution and Article 1, Section 11 of the

The judgment of the trial court is reversed and remanded with instructions.

NAJAM, J., and KIRSCH, J., concur.

Indiana Constitution, he makes no claim or argument in his appellate brief that Section 11 yields a different result than that produced under the Fourth Amendment. Thus, we will not consider D.M.'s state constitutional claim. *See D.L.,* 877 N.E.2d at 503 (observing that because the appellant made no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from the Fourth Amendment analysis, the claim could be resolved on the basis of federal constitutional doctrine alone).